BAIRD *v.* FIDELITY-PHENIX FIRE INS. CO. *et al.*

(*Jackson*, April Term, 1942.)

Opinion filed May 29, 1942.

MOORMAN & MOSBY, and W. M. MAYO, all of Somerville, for complainant.

HOLMES & HOLMES, of Trenton, and T. M. GALPHIN, JR., of Louisville, Ky., for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought to recover $2,000 on a fire insurance policy issued to "Malcolm Baird, Executor of the estate of Mrs. Mollie P. Chambers, deceased," insuring against loss of a store building. The loss in the amount sued for is conceded, the sole defense interposed being an alleged breach of the provision (standard) that the policy shall be void, "if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

In response to this defense it was originally asserted that (1) the Executor at the time of the loss was the sole owner under the will of Mrs. Chambers, and, in the alternative, that (2) the facts brought the case within the well settled rule thus stated in *Life & Casualty Ins. Co.* v. *King*, 137 Tenn., 685, 195 S. W., 585, 589, and ap-

proved in other of our holdings: "Where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions."

On the hearing before this Court counsel have abandoned the claim of sole and unconditional ownership in the Executor and the issue has narrowed to reliance on waiver of this condition of the contract by the insurer. A brief statement of the facts is called for.

The property involved had been owned, at and before his death, by William H. Chambers, who died in 1926, leaving a will by which he "bequeathed" to his widow, Mollie P. Chambers, all of his property "of every kind and description for and during her natural life," but with the power to dispose of "so much of the corpus of my estate as may be necessary for her support and comfort;" and providing, further, by a subsequent clause, that upon the death of the widow, one-half of the property should go to two sisters, and "the other half to be disposed of by my wife by last will and testament as she may see fit," and that, "in case she fails to dispose of same by last will and testament, then said one-half is to go to the heirs of my said wife."

Following the death of William H. Chambers, the widow assumed possession of the store building here involved, along with other property left by her husband, and so continued until her death in December, 1934. She left a will naming Malcolm Baird as her Executor, by which she bequeathed the entire amount which he might realize from her estate to the County of Fayette for

investment in a high school building, etc. Mr. Baird qualified and took possession of this store building, along with other property, and continued in possession and control thereof, collecting the rents therefrom, up to the time of its destruction by fire, November 5, 1937.

Meanwhile, doubt arose as to the nature and extent of the estate passing to Mrs. Chambers under the will of her husband, and the consequent effect of her attempted disposition of the property passing to her thereunder.

Counsel for Executor Baird appears to have expressed to him the tentative opinion that Mrs. Chambers took a fee, rather than a life estate, under the will of her husband, in application of the rule that a subsequent provision in a will conferring an absolute power of disposition converts a life estate into a fee. But recognizing the existence of a doubt as to this question, in view of the particular language of the will, counsel advised the filing of a bill for instructions, with the result that, in September, 1936, the Executor filed such a bill, and this suit was pending when the fire took place in November, 1937, and was still undisposed of when the present suit was instituted in September, 1938.

Acting on the asumption that under the will of her husband, at the death of Mrs. Chambers, a one-half interest in this property passed to the sisters of Mr. Chambers, and that the will of Mrs. Chambers operated to vest the other half interest in him as Executor, to be disposed of for the benefit of the County of Fayette, Executor Baird assumed possession and control of the store building and collected the rents and paid over one-half thereof to the sisters, retaining the other half in the estate, and continued so·to do until the filing of the bill for construction of the wills of the parties in Sep-

tember, 1936. Thereafter and up to the time of the fire he collected and retained all the rents, pending instructions from the Court as to the disposition thereof.

It will, therefore, be seen that at the time the loss by fire occurred the status of the title to this store building was in doubt, subject to the decision of the Court, with the question open whether, first, Mrs. Chambers took a fee, or a life estate only, under her husband's will, with the result that the sole ownership passed to the Executor under the will of Mrs. Chambers; or, second, the sisters acquired a half interest, the other half only passing to the Executor; or, third, by reason of the failure of Mrs. Chambers to exercise bindingly the power of appointment conferred on her as to a one-half interest, the remaining half passed to the heirs of Mrs. Chambers, rather than to Fayette County.

This being the uncertain and unsettled condition of the title at the time of the fire loss, we come now to the facts surrounding the making of the insurance contract relied on by the insured to establish waiver of the condition of the contract requiring sole and unconditional ownership in the insured.

The Executor Baird was the president of the Rossville Bank, with which Mrs. Chambers had done business for the years preceding her death, and the cashier of this bank was Mr. J. B. Rives. Both of these gentlemen, quite apparently, were familiar with the financial affairs and interests of the Chambers estate, which embraced the store building involved, and Mrs. Chambers' succession to ownership thereof through the will of her husband. It may be inferred that it was as a result of this business association that Mr. Baird was chosen by Mrs. Chambers as her Executor. Mr. Rives was and had been for many years the local agent of the insurer

company. He placed this insurance, originally for Mr. Chambers and later for Mrs. Chambers, and it was he who collected the premiums paid thereon. Following the death of Mrs. Chambers in December; 1934, this policy was permitted to remain outstanding, without change, in the name of Mrs. Chambers for some two years. Shortly before its expiration date, January 30, 1937, the Company sent to its agent, Mr. Rives, a renewal policy, reissued in the name of the deceased, Mrs. Chambers. It being obvious that this was not correct, a conference was had between Mr. Baird and Mr. Rives in which it was agreed that the renewal policy should be issued in the name of Baird, as Executor of Mrs. Chambers' estate, and it was accordingly returned by Mr. Rives to his Company and reissued in this form. It was December following that the fire occurred. Mr. Baird had qualified under the will of Mrs. Chambers some two years before this renewal was issued and it is reasonably to be inferred from the relationship of the parties and the circumstances narrated that both Baird and Rives had not only record notice, but personal knowledge of the provisions of the wills involved. But this is not left to inference.

It is proven that, in August, 1936, more than a year before this policy was issued in the name of Baird as Executor, at the time when the question was raised and discussed between the Executor and his counsel as to the proper construction of the provisions of the will of Mr. Chambers and the effect upon the nature and extent of the interests in his estate acquired by his widow, and the filing of the suit for construction and instructions by the Executor, hereinabove mentioned, a conference was had between Mr. Mosby, counsel for the Executor, Mr. Baird and Mr. Rives, the agent and representative of the Insurance Company, in which the situation was fully

discussed, the will of Mr. Chambers read and the conflicting views and contentions considered, Mr. Mosby expressing the tentative opinion that Mrs. Chambers had acquired a fee in this store building, but advising that it was necessary to file suit and obtain an adjudication and Court instructions before an administration was further proceeded with by Mr. Baird, as Executor of Mrs. Chambers' estate. While Mr. Rives testifies to a want of recollection as to this, Mr. Mosby is supported by Baird, who recalls distinctly that Mr. Rives was present and advised with, and other circumstances confirm this.

We think the record is convincing that before and at the time of the conference between Baird and Rives, agent of and acting for the insurer, when it was agreed that the renewal policy, in force when the fire occurred, should be issued in the name of Baird as Executor, this agent of the Company was fully advised that the title and ownership of the property was in doubt and the subject of pending litigation to determine the rights of various parties concerned therein. The insurer was, therefore, chargeable with notice and knowledge that while the estate of Mrs. Chambers might be held to have (1) the sole and unconditional ownership in the property being insured, it might be held that this estate was the owner of (2) a half undivided ownership only, or (3) of no ownership at all. It had knowledge that Baird, as Executor, was meanwhile in possession and control of the property, collecting the rents therefrom and holding as a trustee, in effect, subject to such decree as the Court might render.

Is it possible to conceive that, under such circumstances, it was within the contemplation of the parties that this contract to insure was intended to be subject

to the condition of sole and unconditional ownership, in the event of a loss by fire?

We think it obvious that the principle of the rule stated in *Life & Casualty Insurance Co.* v. *King, supra,* and now generally approved, has application, and that the insurer must be held to have waived this condition. .

The Chancellor decreed a recovery in this suit on the policy of $2,000, the agreed amount of the loss, with interest, and ordered that Baird, the complainant below, hold the "funds as Executor, subject to the adjudication of the rights of the parties in the cause of *Malcolm Baird, Executor,* v. *Fayette County, et al.,*" the suit for construction hereinbefore mentioned. He filed an elaborate finding of fact, and expressed the opinion that the widow took a life estate only, but that she had validity exercised in her will the power of disposition of a one-half interest therein, devising this interest to Fayette County, the other half interest passing to the named beneficiaries, the two sisters of William H. Chambers; that the Executor Baird, therefore, was the owner, as such executor, of a half interest in the insured property, and that in view of the knowledge of all the facts and circumstances with which the Insurance Company was clearly chargeable, the Company had waived the right to rely on a breach of the sole ownership condition; that, even in the event no title passed to the named assured as Executor of the estate of Mrs. Chambers, he was in possession and holding in the capacity of a trustee for those who might be decreed to be entitled to the proceeds payable under the insurance policy, and this situation being known to the insurer when it issued the policy, the insurer was precluded from reliance on the sole ownership condition.

The Court of Appeals reversed and dismissed the suit. In the opinion of that Court the widow took a life estate

only under the will of William H. Chambers, and she had failed to exercise validly—under the authority of *Young* v. *Mutual Life Insurance Co.*, 101 Tenn., 311, 47 S. W., 428, *Guarantee & Trust Co.* v. *Jones*, 103 Tenn., 245, 58 S. W., 219, the text of 21 R. C. L., at p. 795, and of Pritchard on Wills, Sec. 411—the power of appointment conferred on her by the husband's will, and that this one-half interest in the husband's will passed to the heirs at law of the wife. In this view that Court concluded that "the will of Mrs. Mollie P. Chambers did not vest any interest in the insured property in either the complainant as executor, or the beneficiaries in the will, or either of them;" that the provision of the contract invoked was enforceable and operated to prevent a recovery, citing *Payne* v. *Eureka-Security Fire & Marine Insurance Co.*, 173 Tenn., 659, 122 S. W. (2d), 431, and *Alfred* v. *Bankers' & Shippers' Insurance Co.*, 167 Tenn., 278, 68 S. W. (2d), 941. The Court then considers and rejects the insistence that the insurer was estopped from reliance on the sole ownership clause, in application of the rule that, "where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions," as stated in *Johnson Transfer & Freight Lines, Inc.*, v. *American Nat. Fire Ins. Co.*, 168 Tenn., 514, 79 S. W. (2d), 587, 99 A. L. R., 277, and *Life & Casualty Insurance Co.* v. *King*, 137 Tenn., 685, 195 S. W., 585, 589.

The learned opinion of the Court of Appeals then proceeds to discuss the general principles of the doctrine of equitable estoppel, or estoppel *in pais,* which "has its

foundation in fraud,'' exacts good faith and the exercise of diligence by the party invoking estoppel, and, as an essential, that he was without knowledge of the facts. And, says the opinion, ''there can be no estoppel where both parties have the same means of ascertaining the truth.''

We think the learned Court has failed to keep in mind the distinctions between equitable estoppel generally, and estoppel by waiver here invoked. As said in Bigelow on Estoppel, 6th Ed., p. 728: ''It is immaterial that the party claiming the estoppel (by waiver) knew the facts; waiver is not only consistent with, it is generally created upon knowledge of all the facts by both parties.'' In his footnote Bigelow says: ''That kind of waiver which consists merely in renouncing some right, . . . is, certainly, no estoppel, though it has been called such . . . the kind of waiver capable of being described as an estoppel should have the marks of an estoppel, by causing the innocent party to forego some right or otherwise to change his position. Other waivers are more properly cases of election.''

This distinction is thus stated in the opinion in *Shaw* v. *Spencer*, 100 Mass., 382, at page 395, 97 Am. Dec., 107, 1 Am. Rep., 115: ''A waiver is an intentional relinquishment of a known right. An estoppel . . . can be maintained only on the ground that, by the fault of one party, another has been induced . . . to change his position for the worse, in such a manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy.''

In *McCormick* v. *Orient Ins. Co.*, 86 Cal., 260, at page 262, 24 P., 1003, at page 1004, a fire loss case, holding that the facts relied on happening after the loss occurred

did not establish either waiver or estoppel, the Court thus defined the two: "In strictness, the term 'waiver' is used to designate the act, or the consequences of the act, of one side only, while the term 'estoppel' (in pais) is applicable where the conduct of one side has induced the other to take such a position that he will be injured if the first be permitted to repudiate his acts."

Referring again to Bigelow, on page 717, treating of waiver, this learned author says:

"Where by the course of conduct of one party to a contract entitled to the performance of certain terms, or conditions thereof, the other party has been led to believe, as a man of average intelligence, that such performance will not be required, until it has become too late to perform . . ., the person who has so conducted himself is barred from asserting the right he had."

The opinion in *Reid* v. *Field*, 83 Va., 26, at page 33, 1 S. E., 395, at page 400 quotes Hare on Contracts (par. 272) for the following: "Waiver is a renunciation of some rule which invalidates the contract, but which, having been introduced for the benefit of the contracting party, may be dispensed with at his pleasure;" and cites Benjamin on Sales, par. 566, for the statement that, "It is a recognized principle that every one may waive a right intended for his own benefit, if it can be relinquished without detriment to the community at large."

In the opinion of the Supreme Court of Massachusetts, in *Farlow* v. *Ellis et al.*, 81 Mass. (15 Gray), 229, at page 231, dealing with a contract of sale, occurs this pertinent statement of the doctrine of waiver:

"When there is a condition made at [or in] the contract of sale favorable to the vendor, and solely for his benefit, he may, if he choose, [or elect], waive it, and treat the contract as if no such condition had been em-

braced in it. Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.''

These principles, applicable more strictly to waiver, as distinguished from estoppel *in pais*, are controlling here. Conceding, as argued, that both parties to the insuring contract were of opinion, as a matter of legal construction of the will of William H. Chambers, that the sole ownership was in the estate of Mrs. Chambers, the evidence is convincing that both well knew that the issue was in doubt, and was in process of settlement in a pending litigation. Both knew that it might develop that the Executor, to whom the insurance was issued, had in law and fact no personal ownership, much less the sole and unconditional ownership exacted by this provision of the policy. It is, therefore, inescapable that it was the intention of the insurer to waive this requirement and, regardless of how the legal ownership might turn out to be vested, to contract to pay the loss by fire, if such should occur, to the named assured. Surely it was not in the contemplation of the parties that such loss would be paid only in the uncertain event that the Court should hold Mrs. Chambers to have been a sole and unconditional owner. Here, clearly, is a case where the insurer had knowledge at the time of the issuance of the policy of the existence of a state of facts wholly inconsistent with the condition requiring sole and *uncondi-*

*tional* ownership, and the insurer is therefore precluded from relying thereon.

But it is argued, and so viewed, as we understand, by the Court of Appeals, that the named insurer had no ownership at all, and without such ownership there could be no insurable interest, and that, therefore, there could arise and exist no obligation to pay for a loss of the property by fire.

We do not concede the premise. We are of opinion that, admitting a lack of ownership, the Executor had an interest which was insurable, supporting the contractual obligation, knowingly and voluntarily undertaken.

Assuming always that the insurer be advised of the facts, that there has been no misrepresentation of the nature of the interest held or claimed by the named assured in the property, we find ample text book and decision authority for holding the insurer liable, on the facts of this case.

■ In our early case of *Catron* v. *Tennessee Insurance Co.*, 25 Tenn. (6 Humph), 176, TURLEY, J., quotes approvingly from the opinion of Chief Justice MARSHALL, in *Columbian Insurance Co.* v. *Lawrence*, 2 Pet., 25, 7 L. Ed., 335, this statement of the applicable rule, quoted in turn from Marshall on Insurance against Fire, p. 789, b. 4, ch. 2; "It is not necessary however, in order to constitute an insurable interest, that the assured shall in every instance, have the absolute and unqualified property of the effects insured. A trustee, a mortgagor, a reversioner, a factor or agent, with the custody of goods to be sold upon commission may insure; but with this caution that the nature of the property be distinctly specified."

In the somewhat later case of *Ætna Insurance Co.* v. *Miers*, 37 Tenn. (5 Sneed), 139, 141, CARUTHERS, J., finding that the true character and extent of the insured's interest had been disclosed to the insurer, which "was essential to his claim," and holding the insurer liable, although without the legal title, the Court made these general observations:

"What is an insurable interest in property, is not very clearly and distinctly settled in the books. It is said that *it may be proved, without the evidence of any legal or equitable title to the property insured. The term interest, in this application, does not necessarily imply property.* There is some difficulty in likening an insurable interest to any other interest in property. Angel on Ins., sec. 56. But policies of insurance, without some interest, are illegal and void, as a species of gaming.

"So there must be a line of distinction between wager policies, and those coupled with an interest.

"The contract of insurance is one of indemnity against losses and disadvantages to the insured; and therefore, *any interest in the subject matter, or property insured,* is sufficient to sustain an insurance of real estate."

We have italicised particularly pertinent language.

The principles above announced were followed in the opinion of our present Chief Justice GREEN in *Gleason* v. *Prudential Fire Insurance Co.*, 127 Tenn., 8, at page 28, 151 S. W., 1030, at page 1035, which we quote:

"The only question raised upon this petition is whether the husband has an insurable interest in the wife's general estate. The title to the property insured and destroyed was in Mrs. Adkisson, but the policy was issued to Adkisson and wife, and it is insisted on behalf of the receiver that Adkisson did not have any interest in this

property, and that there can be no recovery on this policy. This defense is not well made.

"It appears in the proof that the property was Mrs. Adkisson's general estate. Her husband, therefore, had a freehold estate therein, with the right to control it, and various other rights respecting it, which are well recognized. Standing in this attitude to the property, he had an insurable interest in it. We have so held in former unreported cases. Many authorities to this effect are collected in a note to *Tyree* v. *Virginia F. & M. Ins. Co.*, 66 L. R. A., 657. The husband has a beneficial interest in such property, and he is also treated in many of the cases as agent for the wife respecting such property."

Thus it appears that a "beneficial interest" only is insurable, and that of "an agent."

This Executor might classify under either, or both, of these descriptive terms. While a beneficial interest may exist without a direct monetary basis, this Executor had a degree of monetary interest in preserving from loss this estate he was administering and on the proceeds of which he was dependent for his compensation. But he was certainly an "agent," by common consent, for all those who claimed a part in the property, and his relationship and responsibility, whether technically having the title as Executor or not, was that of a trustee. In *Lancaster Mills* v. *Merchants' Cotton-Press Co. et al.*, 89 Tenn., 1, 14 S. W., 317, 327, 24 Am. St. Rep., 586, it was said that "a carrier has such an insurable interest in goods intrusted to him for carriage that it may insure, not only its interest or its liability, but the whole value of the goods, and in such case it may collect the whole value, and, after reimbursing itself for its special loss, it will hold the surplus in trust for the owner.

In 29 Am. Jur., p. 293, *et seq.*, the general rule is said to be that, "anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction," and it is sufficient that a loss of the property insured not only would, but might subject the insured to pecuniary injury. Many cases supporting the text are cited. "Even a contingent interest may constitute an insurable interest." *Idem.* This Executor certainly had a contingent ownership interest in this store building. We quote again from this same authority: "An insurable interest in property need not be one which attaches to the insured in his personal capacity, but may be one which attaches in a fiduciary or representative capacity." Indeed, the broad rule seems to be that any one who has made himself responsible for property may insure it against loss. And with particular application to the instant case, it is said that, "Executors and administrators have an insurable interest in property under their care and protection." In the leading case of *Howard F. Insurance Co.* v. *Chase,* 72 U. S. (5 Wall.), 509, 513, 18 L. Ed., 524, it was said, "that a trustee having no personal interest in the property may procure an insurance on it, is a doctrine too well settled to need a citation of authorities to confirm it."

Now, whatever may have been the exact status of the ownership of this building (as to which there was uncertainty, as well known to both the insurer and insured at the making of the contract), there can be no doubt that it was in the possession and control and under the care and protection of Baird, in his capacity as Executor, with the obligation upon him, recognized by him, to account as the Court might decree for the property and all proceeds therefrom. We approve this statement from 25 C. J., p. 26, of the general rule, directly in point here:

"One having the care, custody or possession of property for another (or others) without liability and without any pecuniary interest therein may nevertheless obtain insurance thereon for the benefit of the owner."

We have no hesitancy in concluding that when the insurer assumed the obligation to insure this property against loss by fire, it (1) waived the condition requiring sole and unconditional ownership, and (2) estopped itself from denying the existence of an insurable interest in the named assured. We are, therefore, constrained to reverse the decree of the Court of Appeals and affirm the decree of the Chancellor.