Nelson L. GRISWOLD, Jr.,
and Nancy J. Griswold

v.

INCOME PROPERTIES, II

v.

SUMMIT RESTAURANTS, INC.

Court of Appeals of Tennessee,
Middle Section at Nashville.

Dec. 22, 1993.

Permission to Appeal Denied by
Supreme Court May 16, 1994.

Robert A. Anderson, Randall C. Haynes, Nashville, for appellant.

William S. Hofstetter, James C. Hofstetter, Nashville, for appellees.

## OPINION

LEWIS, Judge.

Plaintiffs Nelson L. Griswold, Jr. and Nancy J. Griswold (the Griswolds), filed a declaratory judgment action against defendant Income Properties, II, a limited partnership (Income Properties), seeking a declaration as to whether Income Properties "is improperly occupying ... leased premises (Mr. Gatti's site) and has acted in bad faith by denying plaintiff possession of same." Plaintiffs also sought compensatory damages from Income Properties "for all the past due and unpaid rents accruing while defendant continues to occupy the premises, including pre-judgment interest...."

Income Properties answered setting forth several affirmative defenses including, inter alia, a request to dismiss pursuant to Tennessee Rules of Civil Procedure 12.02(7) and Tennessee Code Annotated section 29–14–107(a), defensive waiver, estoppel, and failure to mitigate. Defendant also filed a counter-complaint against plaintiffs seeking, inter alia, "judgement [sic] against the plaintiffs for nominal damages, compensatory damages including lost interest, pre-judgment interest, punitive damages, and attorneys' fees in the total sum of not more than $500,000.00 together with the cost of this action." The plaintiffs then moved to dismiss Income Properties' suit by filing a Tennessee Rule of Civil Procedure 12.02(6) motion and also the defense of estoppel.

Thereafter Income Properties filed a motion for partial summary judgment "on the issue of breach of contract...."

Plaintiffs then filed their motion for partial summary judgment on the "issue of whether the lease agreement with reference to the Mr. Gatti's site was properly renewed in accordance with the terms of the lease ..."

The trial court, following argument, denied Income Properties' motion for partial summary judgment and sustained plaintiffs' motion to dismiss Income Properties' counterclaim.

Plaintiffs were subsequently permitted to file an amended complaint. Income Properties then filed an answer and amended counterclaim. However, an order was subsequently entered striking the amended counterclaim.

On 18 December 1992 the trial court heard argument on the plaintiffs' motion for partial summary judgment and made an oral finding that the plaintiffs' motion should be granted. An order was subsequently entered reflecting the court's finding that the base lease was not renewed as to the Mr. Gatti's site and granting plaintiffs' motion for partial summary judgment.

Income Properties filed a motion for permission to file a third-party complaint and subsequently orally moved to continue the trial for the following reasons: a) a witness could not attend the hearing, and b) all interested parties were not before the court. The trial court, however, denied the oral motions to continue the trial.

On 11 January 1993 a hearing was held on the issue of damages. The trial court ruled that the plaintiffs were entitled to recover damages in the amount of $4,700.00 per month from 30 June 1991, the date the lease agreement expired, to the present, together with pre-judgment interest and reasonable attorneys' fees. After a hearing on reasonable attorneys' fees and the proper computation of pre-judgment interest, judgment was entered in favor of the plaintiffs on 27 January 1993 in the amount of $115,683.86, less any credit to which defendants are entitled on the sums tendered into court.

On 25 February 1993 following the entry of the "Final Decree" on 27 January 1993, the trial court granted Income Properties' motion to file a third-party complaint.

On 1 March 1993 Income Properties filed their appeal from what they contend is the truly final order, the order of 25 February 1993.

The base lease, the lease executed 19 June 1976 which is the source of the claims of all parties, was for a rectangularly shaped tract of land located in the Green Hills section of Davidson County, Tennessee. The property fronts on two adjacent sides with surface streets, and with adjacent private properties on the other two sides. The property occupied by Mr. Gatti's consists of a rectangle within the property described in the base lease and abuts adjacent private property. The property occupied by Mr. Gatti's does not abut the street, but there is a provision in the property description which grants ingress and egress to the Mr. Gatti's property. There is also an easement over a portion of the base lease property in front of the Mr. Gatti's rectangle allowing for parking of 24 vehicles.

Income Properties and H & M Restaurants, Inc. came to have claims under the base lease as follows:

The Griswolds owned the land in the base lease which is the subject of the instant suit. The Griswolds have owned it at all times pertinent. Mr. Griswold originally operated a restaurant on the property known as Nero's Cactus Canyon.

The Griswolds separated title of the real property so that the ownership of the land was recorded by a different instrument than the ownership of the structure housing the restaurant. On 19 June 1976 the Griswolds leased the land to Ireland's Restaurant, Inc. for a term of 15 years ending on 30 June 1991.

The base lease at paragraph 21 provides: Lessee has the option to renew this lease for three additional five-year periods on the same terms, conditions, and rentals as specified herein, said option to be exercised by notice given in writing by Lessee not less than One Hundred Eighty (180) days prior to the termination date of this lease, or any renewal thereof."

On 21 June 1976, two days after entering into the base lease, the Griswolds sold the improvements of the land subject to the base lease to Ireland's Restaurant. At some point between 1976 and 28 May 1980, Ireland's Restaurant changed its corporate name to Southern Hospitality Corporation. Also between 1976 and 28 May 1980 a second structure was built on the land that is the subject of the base lease.

On 28 May 1980 Southern Hospitality Corporation made a simultaneous assignment of a "portion of its interest in the [base] lease" to Big "O" Ovens, Inc. (first assignee) and then to "Income Properties, II (second assignee)," with language pertinent to this assignment as follows:

1. Assignor hereby assigns to the First Assignee all of Assignor's right, title and interest in and to the lease as the same pertains to the Mr. Gatti's site and such party simultaneously assigns all of its right, title and interest in and to the lease to Income Properties, II.

. . . .

3. It is agreed and understood between Lessor and Southern Hospitality Corporation as Lessee that notwithstanding the consent to the assignments herein by the Lessor that Southern Hospitality Corporation shall not be relieved of its original obligation under the lease.

4. Except as modified herein, the Lease shall not be changed but shall remain in full force and effect with respect to Southern Hospitality Corporation.

The assignment also provided unofficial legal descriptions for the Mr. Gatti's site and for the Ireland's site within the base lease premises. Big "O" Ovens, Inc. executed a lease agreement with Income Properties, II on 28 May 1980 allowing Income Properties, II to occupy the second structure. Southern Hospitality Corporation operated Mr. Gatti's in this location as a sublessee of Income Properties until 27 June 1986 when it assigned its interest in the sublease to Mr. Gatti's, Inc., a Texas corporation, the current occupant. On 30 September 1981 after the

assignment to Income Properties, the Griswolds and Southern Hospitality Corporation amended the base lease as it applied to rental payments. The relevant portions of the 30 September 1981 amendment states:

1. Subparagraph 3. a) is hereby deleted and the following new subparagraph is hereby substituted in lieu thereof:

3. a) Lessee covenants and agrees to pay to Lessor annual guaranteed rental in the amount of Forty–Two Thousand and No/100 ($42,000.00) Dollars, and to pay the same monthly, in advance, in equal installments of Three Thousand Five Hundred and No/100 ($3,500.00) Dollars, on the first (1st) day of each month from the day hereof until the termination of this Lease. Monthly installments for any fractional month within the term of this Lease shall be prorated upon the basis of the number of days of said month falling within the said term divided by the number of days in said month. It is agreed and understood between Lessor and Lessee that the aforesaid annual guaranteed rental shall be allocated between the portion of the premises more particularly described in Exhibit "A," which is attached hereto and incorporated herein by reference, hereinafter referred to as the "Mr. Gatti's Site," and the remainder of the premises, hereinafter referred to as the "Ireland's Site," as follows:

Annual guaranteed rental for the Mr. Gatti's Site shall be Twelve Thousand and No/100 ($12,000.00) Dollars, per year, payable in monthly installments of One Thousand and No/100 ($1,000.00) Dollars each; and

Annual guaranteed rental for the Ireland's Site shall be Thirty Thousand and No/100 ($30,000.00) Dollars, payable in monthly installments of Twenty Five Hundred and No/100 ($2,500.00) Dollars, each.

2. Subparagraph 3. b) of the Lease is hereby deleted and the following new subparagraph is hereby substituted in lieu thereof;

3. b) In addition to the annual guaranteed rental Lessee agrees to pay to Lessor as additional rental an amount equal to five percent (5%) of gross sales, as hereinafter defined, made by Lessee on the Ireland's Site from $600,000.00 to $1,000,000.00, and an amount equal to two and one-half (2.5%) per cent of gross sales, as hereinafter defined, made by Lessee on the Mr. Gatti's Site in excess of Two Hundred Forty Thousand and no/100 ($240,000.00) Dollars and on the Ireland's site in excess of One Million and No/100 ($1,000,000.00) Dollars. Said additional rental is to be computed monthly and payable quarterly.

Paragraph three of the amendment states, in pertinent part:

3. Lessor hereby consents to the following assignments:

. . . . .

b. An assignment of Lessee's interest in the Lease with respect to the Mr. Gatti's Site to Big "O" Ovens, Inc., or Income Properties, II, a limited partnership, and their successors and assigns; and

. . . . .

d. An assignment of Lessee's interest in the Ireland's Site to O. Henry, Ltd., a limited partnership, and its successors and assigns; and . . .

Only Southern Hospitality Corporation, the lessee, and the Griswolds, the lessors, signed the amendment. It was not signed by Income Properties nor Big "O" Ovens. Even though the amendment was not signed until 30 September 1981, it was effective retroactively to 28 May 1980, the day the document giving rise to Income Properties' interest in the property was executed.

With respect to the Mr. Gatti's site, the property has been used as a Mr. Gatti's pizza restaurant by different entities. Pursuant to an agreement between defendant Income Properties and Southern Hospitality Corporation, Southern Hospitality operated the restaurant on that site until 27 June 1986, when Southern Hospitality assigned its interest in the leased premises to Mr. Gatti's, Inc., a Texas corporation.

With respect to the Ireland's site, the interest in the lease premises was ultimately assigned to H & M Restaurants, Inc..

By letter dated 23 February 1990, H & M Restaurants, Inc. gave the Griswolds notice of its intention to exercise its option to renew its lease. At no time prior to that date did anyone associated with the Mr. Gatti's site contact H & M Restaurants, Inc. with regard to renewal of the lease. It was the intention of H & M Restaurants, Inc. to renew the lease with respect to the Ireland's site only.

No notice of renewal was sent to the Griswolds with respect to the Mr. Gatti's site prior to the deadline for the giving of notice of his intent to renew.

Income Properties had no knowledge of the renewal by H & M Restaurants, Inc. prior to the 1 January 1991 deadline.

On 25 February 1991, after the expiration date of the renewal option, Income Properties mailed the Griswolds notice of its intent to renew its lease. The notice was mailed to the wrong address and was returned to Income Properties. No further attempt was made by Income Properties to renew its lease.

Income Properties insists that its lease has been renewed as a result of the letter sent to the Griswolds by H & M Restaurants, Inc..

As of the date of trial, rent on the Mr. Gatti's site had been paid only through 30 June 1991, the expiration date of the lease.

The Griswolds insist the fair rental value of the Mr. Gatti's site is $4,800.00 per month.

Both Mr. Gatti's, Inc. and Southern Hospitality Corporation have filed petitions in bankruptcy.

Plaintiffs/appellees have presented the issue of whether this court has jurisdiction to hear defendant's appeal. The plaintiffs allege that defendant failed to timely file notice of appeal.

On 27 January 1993 the final decree was entered disposing of all the claims and rights of all the parties to this suit. When the final decree was entered on 27 January 1993 a motion by defendant Income Properties for permission to file a third-party complaint was pending in the trial court.

Tennessee Rule of Appellate Procedure 4(b) provides as follows:

In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 54.04(2) to assess costs; (4) under Rule 59.02 for a new trial; (5) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any such other motion.

As can readily be seen, a motion to file a third-party complaint is not one of the motions which will extend the time for the filing of notice of appeal.

On 25 February 1993 the trial court granted permission to defendant to file a third-party suit. That 25 February 1993 order declared that the judgment previously entered in favor of the plaintiff was final.

On 1 March 1993, more than thirty days after the entry of the 27 January 1993 final decree, Income Properties filed a notice of appeal.

On 2 March 1993 Income Properties filed its third-party action against Summit Restaurants, Inc.

■ The time for filing the notice of appeal begins to run from entry of the Final Decree on 27 January 1993. *See* Tenn. R.Civ.P. 54.02 and Tenn.R.App.P. 3(a). The entry of the order permitting filing of a third-party complaint, failed to disturb the formality of the Final Decree, because no additional parties had been *brought into the suit and no additional claims had been made.* The thirty days for filing a notice of appeal expired on 26 February 1993. Since the notice of appeal was not filed until 1 March 1993, it was not timely.

■ Even if the third-party complaint had been filed during the thirty day period, the

third-party defendant, Summit Restaurants, Inc., would not be considered a party for purposes of Tennessee Rule of Civil Procedure 54 until it was either served with process or entered an appearance. *See Fidelity Savings & Loan Ins. Corp. v. Tullos–Pierremont,* 894 F.2d 1469, 1475 (5th Cir.1990); *see also* 59 Am.Jur.2d *Parties* § 8 (1987).

Notwithstanding our determination that notice of appeal was not timely filed, we will address the issues raised by the defendant. The defendant's first issue is "whether the trial court erred in granting the Griswolds partial summary judgment when not all interested parties were given notice and an opportunity to be heard and when the option to renew was either exercised for all co-lessees or the failure to exercise the option for all co-lessees was waived."

Plaintiffs insist, and we agree, that Income Properties waived the defense that all necessary parties were not before the court. In its answer, Income Properties alleged that plaintiffs' action for declaratory judgment should be dismissed because H & M Restaurants, Inc. had not been joined as a party. Income Properties did not raise this issue in response to plaintiffs' motion for partial summary judgment on the issue of liability. In fact, in spite of the alleged absence of H & M Restaurants, Inc., Income Properties filed its own motion for a partial summary judgment. Thereafter the Griswolds' motion for partial summary judgment, which was supported by the affidavit of the president of H & M Restaurants, Inc., was granted by the trial court.

On 31 December 1992 Income Properties filed a motion for permission to file a third-party complaint. Attached to the motion was a copy of the proposed third-party complaint wherein Summit Restaurants, Inc., formerly H & M Restaurants, Inc., was named as a party. In the motion Income Properties stated that the filing of the motion should in no way delay the trial which was set for 11 January 1993.

On 8 January 1993 an oral motion was made to continue the trial on the ground "that all parties whose entrance would be adversely affected by the summary judgment, were not before the court." The record before us does not disclose which parties were mentioned by Income Properties as allegedly being required to be joined.

On 11 January 1993 at the trial on the issue of damages, Income Properties again raised the issue. At that time in addition to H & M Restaurants, Inc. which was mentioned in defendant's answer, Income Properties stated that Wayne Oldham, Southern Hospitality Corporation, and Mr. Gatti's, Inc. were necessary parties.

Plaintiffs insist that because Income Properties did not bring this defense to the attention of the court until after its motion for partial summary judgment had been denied and plaintiffs' motion for partial summary judgment had been granted, this failure constituted a waiver of the defense.

■ The defense's failure to join an interested or indispensable party must be raised no later than a trial on the merits. Tenn.R.Civ.P. 12.08. While the defense was raised with respect to H & M Restaurants, Inc. in the answer filed by Income Properties, it was not brought to the attention of the trial court until after the hearing on the issue of damages and after the issue of liability had been decided. Income Properties attempted to hold this defense as an ace in the hole in the event its motion for summary judgment was not granted, and we are of the opinion it therefore waived the defense of indispensable parties.

Income Properties, as an afterthought, insisted that the summary judgment entered in favor of the Griswolds should have been vacated because plaintiff failed to join Southern Hospitality, Wayne Oldham, H & M Restaurants, Inc., and Mr. Gatti's as parties.

■ Southern Hospitality Corporation is both an assignor of the lease and a former sub-lessee of the leased property. Wayne Oldham guaranteed the obligation of Southern Hospitality as an assignor of the lease. Even if the Griswolds successfully proved that Income Properties failed to renew the lease, Southern Hospitality and Wayne Oldham would be released from liability. We are therefore of the opinion that they are not parties whose interest would be affected

within the meaning of Tennessee Code Annotated § 29–14–109. Also, H & M Restaurants, Inc. has no interest at all in the subject premises. Mr. Gatti's, Inc. is not in privity of contract with the Griswolds. In addition Nelson Griswold testified that Mr. Gatti's, Inc. would be allowed to continue to occupy the property under a new lease on the same terms and conditions as the Income Properties sub-lease. Therefore, Mr. Gatti's would not be affected by the litigation. Also Mr. Gatti's could not be joined because of the filing of the petition in bankruptcy unless relief from the automatic stay was obtained in the United States Bankruptcy Court in Texas.

Income Properties argues that when H & M Restaurants, Inc. exercised the option to renew for its portion of the lease, the Griswolds waived any right to insist upon defendant's notice of intent to renew. In other words, Income Properties argues that it has the right to piggyback on H & M Restaurant's notice of renewal.

> It is the well-recognized general rule that the benefit of the lessor's covenant to renew runs with the leasehold estate and is enforceable by an assignee; and, as a corollary to this rule, after a lessee has assigned the term, he loses his right to enforce the renewal, since such right has passed to his assignee. . . .
>
> Since a general covenant to renew is indivisible, if the lessee assigns a part of the demised premises, the assignee, according to the generally accepted view, has not right to demand a renewal as to such part, and where an assignment of a part of the demised premises includes an assignment of the right to the renewal of the lease for such part, the lessor, by executing a consent to the assignment, does not agree that his covenant for renewal may be exercised with respect to such part only of the demised premises. But in case separate interests in portions of the leasehold are assigned to several persons, they may jointly compel the lessor to renew the lease to their assignor. The lessor may, after the assignment of the leasehold interest in a part of the premises, be bound by his

agreement or promise to the assignee to renew with respect to such part.

50 Am.Jur.2d *Landlord and Tenant* § 1194 (1970) (footnotes omitted).

Income Properties had no individual right to renew its lease as to the Mr. Gatti's portion of the property. A renewal of both leases could be properly accomplished by the joint efforts of both Income Properties and H & M Restaurants. Even though lessor is not obligated to renew a lease with respect to only a portion of the leased premises, if he agrees to do so, he will be bound.

Prior to the expiration of the renewal period, the Griswolds received a request for renewal from H & M Restaurants, Inc.. H & M's request was solely for the benefit of H & M Restaurants, Inc. and pertained only to the Ireland's portion of the leased premises.

Such a request by the holder of a partial assignment is not enforceable against the lessor in the absence of an agreement. Here there had been no discussion between H & M Restaurants and any other party claiming an interest in the Mr. Gatti's site prior to the time that H & M Restaurants requested a renewal of its portion of the lease. Permission given by the Griswolds, as lessors, to an assignee of the partial portion of the leased premises, in this case H & M Restaurants, Inc., does not inure to the benefit of another partial assignee who has neither given notice or in any way expressed an intent to renew.

Income Properties also argues that the Griswolds' agreement to allow H & M Restaurants, Inc. to renew its lease on the Ireland's portion of the leased premises, constituted a waiver of the Griswolds' right to insist upon a proper notice of renewal from Income Properties. In support of this contention, Income Properties takes the position that the Griswolds had no right to grant a renewal with respect to a portion of the leased property. Income Properties then concludes that by failing to insist upon the renewal being exercised by both of the partial assignees, the action taken by H & M Restaurants resulted in a renewal of the entire lease.

Income Properties argument ignores the fact that H & M Restaurants did not seek the renewal of the entire lease. It sought only to renew its lease with respect to the Ireland's site. The Griswolds, while under no legal obligation to this request, were bound with respect to any agreement which they made. Any agreement which plaintiffs made with respect to the Ireland's site could not result in a waiver of a right to proper notice with respect to the Mr. Gatti's site, because no request was ever made with respect to the Mr. Gatti's site. Income Properties made only one belated attempt to exercise the renewal option with respect to the Mr. Gatti's site, but the letter was returned. Thereafter, they made no further effort to take any steps to protect their leasehold interest.

In regard to waiver the Supreme Court in *Baird v. Fidelity–Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 389 (1942) speaking through Judge Chambliss stated as follows:

Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he could have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.

*Id.*

Here, the request by H & M Restaurants for renewal upon which Income Properties attempts to rely, related only to the Ireland's site and not to the Mr. Gatti's portion of the leased premises. The Griswolds had the right to deny the request for a partial renewal. The Griswolds' agreement to a renewal of the lease with respect to the Ireland's site, constituted a waiver of the Griswolds' right to reject a partial renewal. We have found no authority, nor has any been cited to us, for the proposition that the Griswolds' action would cause a renewal of the entire lease.

Income Properties next issue is "whether the trial court erred in failing to grant the T.R.C.P. Rule 41.02(2) motion of Income Properties, II because the Griswolds failed to proved [sic] their cause by a preponderance of the evidence." Tenn.R.Civ.P. § 41.02(2) states in pertinent part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; ...

Following the conclusion of the hearing on damages, the trial court ruled that the Griswolds were entitled to damages from defendant Income Properties as a result of the holdover of the lease of the Mr. Gatti's portion of the property. The trial court based its determination upon the continued insistence by Income Properties that the lease had been renewed as to the Mr. Gatti's site and its promise to Mr. Gatti's that it would vigorously defend its right to continue to occupy the property.

The trial court found that the proper measure of damages was the fair rental value of the property from the date of the expiration of the lease on 30 June 1991 to the trial date. The trial court, based upon the evidence, found that the fair rental value of the portion of the leased properties occupied by Mr. Gatti's was $4,700.00 per month. The plaintiffs insist that the damages awarded should have been $4,800.00 per month and that the court was misled by the erroneous statement of the counsel for the Griswolds that Mr. Griswold had testified that the fair rental value was $4,700.00 per month, when in fact he had testified that it was $4,800.00 per month.

We find nothing in the record from which to determine that we should modify the judgment to increase the damages by $100.00 per month. This issue is without merit.

By their fifth issue, Income Properties insists "the trial court erred in its award of attorney's fees to the Griswolds." Paragraph six of the base lease provides that the lessee agrees to pay reasonable attorney's fees "in the event it [became] necessary for lessor to employ attorneys or institute any legal proceedings for the enforcement or protection of its rights." Pursuant to paragraphs eight and sixteen of the base lease, lessees promise to surrender possession of the premises to the Griswolds upon the expiration of the lease. They did not do so, and the Griswolds brought the instant suit. Pursuant to the lease between the parties, the Griswolds are entitled to recover attorney's fees.

While the base lease was not introduced into evidence, it was relied upon in the complaint, and its genuineness was admitted in the answer. This issue is without merit.

Income Properties further argues that "the trial court erred in allowing all the attorney's fees requested".

Income Properties objects to certain of the time charges submitted by Griswolds' counsel; however, we find nothing in the record or in the brief regarding the number of hours which should be disallowed.

They also allege that a lesser fee should have been requested by the Griswolds for certain unspecified clerical work.

There is proof in the record that William Hofstetter, attorney for the Griswolds, charged an hourly rate which is less than that normally charged by lawyers of similar experience because he is required to perform certain clerical duties from time to time.

Income Properties also complains that the Griswolds employed a second lawyer during the latter stages of the case and that the lawyer requested fees for certain unspecified hours to bring him "up to speed".

We find no abuse of the trial court's discretion in allowing fees for the lawyer to review the case. Certainly the fee charged would have been much less than if two lawyers had been used throughout the case, as the defendants did.

The record is clear that second counsel rendered valuable services, and they are properly chargeable to Income Properties under the contract.

We have considered the Griswolds' issue that they should be awarded attorney's fees for their services rendered on appeal and find their request to be without merit.

It therefore results that the judgment of the trial court is affirmed in all respects and the cause remanded to the trial court for the collection of costs which are assessed to the defendants/appellants and for any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.