IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2002 Session

## AUDREY J. OWEN v. WILLIAM C. MARTIN, III

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 98-374-III, 98-1804-III     The Honorable Ellen Hobbs Lyle, Chancellor**

_____

**No. M2001-02940-COA-R3-CV - Filed December 31, 2002**

_____

This case was previously remanded by this Court for a determination of monthly payments due to Appellee from a resulting trust. Appellant appeals from an Order entered by the Chancery Court upon remand. The Order set the amount of the monthly payments but set no end date for those payments. We hold (1) that the corpus of the resulting trust is the equity Appellee possessed in the Property and is, therefore, a finite amount, (2) that the corpus should be reduced by rental amounts owed to Appellant by Appellee, and (3) that the remainder of the corpus may be paid as provided by the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and PATRICIA J. COTTRELL, J., joined.

B. Lynn Morton, Clarksville, For appellant, William C. Martin, III

R. Price Nimmo; Rabin P. Nimmo, Nashville, For Appellee, Audrey C. Owen

**OPINION**

This case is before us on a second appeal.[1] Before addressing the issues before us, we briefly review the pertinent facts and procedural history. Audrey Owen ("Ms. Owen," or "Appellee") and her husband, Roy, purchased a three-bedroom, two-bath home at 2800 Noonan Drive in Davidson County (the "Property") in 1976. Although they eventually paid off the mortgage, in 1989, they borrowed approximately $60,000 secured by another mortgage. Ms. Owen used $30,000 of the loan proceeds to purchase a square dance apparel business called the Flutter Wheel. Shortly after the purchase of Flutter Wheel, Roy Owen left the marital home. Ms. Owen developed physical

_____

[1] The original appeal to this Court is *Owen v. Martin*, No. M1999-02305-COA-R3-CV, 2000 Tenn. App. LEXIS 810 (Tenn. Ct. App. Dec. 13, 2000).

maladies, which kept her from working. Flutter Wheel was not profitable and Ms. Owen eventually stopped paying the property taxes and mortgage payments on the Property. When the mortgage-holder threatened to foreclose, Ms. Owen and Roy Owen signed a contract to have the Property auctioned. Ms. Owen's son, William Martin ("Mr. Martin," or "Appellant") offered to help with the mortgage payments and Ms. Owen was able to have herself released from the contract to auction the Property.

Although Mr. Martin had resided in Cincinnati since 1988, he often visited Nashville to see his two children. Mr. Martin planned to convert the area over the garage into an apartment for his use when he came to Nashville. After discovering that Ms. Owen's equity in the house exceeded the mortgage obligation, Mr. Martin allowed the Property to go into foreclosure and then purchased it himself at the mortgage sale.[2] Mr. Martin allowed his mother to continue living in the main house but he did not begin renovations on the garage. Ms. Owen used the area for storage, including storage for the Flutter Wheel inventory. Eventually, Ms. Owen allowed Mr. Martin to sell the Flutter Wheel inventory in order to finance some repairs to the Property.[3]

In 1997, Mr. Martin asked Ms. Owen to begin making the monthly payments on the mortgage. She refused. The matter escalated until Mr. Martin sent Ms. Owen a letter giving her the option of paying $250 per month in rent, or vacating the house so that he could sell it. Ms. Owen failed to respond to this letter.

On January 31, 1998, Mr. Martin filed a detainer warrant against Ms. Owen in the Davidson County General Sessions Court. Ms. Owen responded on February 6, 1998 with a Complaint in Chancery Court. Ms. Owen's Complaint prayed for a temporary restraining order to prevent Mr. Martin from evicting her. She also asked the court to declare a constructive or resulting trust on the property in her favor or, in the alternative, that the property be sold and that she receive all of the equity plus approximately $23,000 for the value of the Flutter Wheel inventory.

On February 27, 1998, the general sessions court awarded Mr. Martin possession of the home. Ms. Owen appealed the decision to the Circuit Court and filed a motion to transfer the case to the Chancery Court. The Circuit Court granted Ms. Owen's motion to transfer and the case was consolidated with the action pending in Chancery Court. The case was tried August 2 and August 3, 1999. The court awarded Mr. Martin possession of the house and ordered Ms. Owen to move out on or before September 15, 1999.[4] Mr. Martin was also ordered to pay a money judgment to Ms.

---

[2] Mr. Martin paid off the back taxes, made a $16,000 down payment and financed the remainder of the $62,088 purchase price.

[3] Mr. Martin realized $3,000 by selling the inventory to a liquidator.

[4] Ms. Owen vacated the Property on September 15, 1999.

Owen in the amount of $38,911.[5] Mr. Martin filed a Motion to Alter or Amend the Judgment, which was subsequently denied on November 17, 1999.

Mr. Martin appealed to this Court. In this Court's opinion of December 13, 2000, we affirmed the lower court's decision regarding the award of $3,000 to Ms. Owen for her interest in the Flutter Wheel inventory. We reversed the lower court's finding that there was an enforceable contract between the parties because, even if there was a meeting of the minds, the contract was not evidenced by a writing and was, therefore, in violation of the Statute of Frauds. We also determined that a resulting trust was created, which inured to the benefit of Ms. Owen. Because Ms. Owen had moved from the Property, this Court held that:

> In order to accomplish the purpose of the trust (providing shelter to Ms. Owen from the proceeds of her interest in her former residence), we find that Mr. Martin must make monthly payments to Ms. Owen in an amount measured by the rental value of the house on Noonan Drive without the garage apartment. Mr. Martin has already testified that the house, if undivided, could rent for $750 or $800 per month, but we have seen no testimony as to how much less it would be likely to bring after being divided.

We remanded the case to the trial court for further proof to determine the correct rental amount of the Property sans the garage apartment.

The matter was heard by the Chancery Court on August 14, 2001. On August 22, 2001, Chancellor Ellen Hobbs Lyle entered an Order, which reads in pertinent part as follows:

> Upon consideration of the Opinion of the Court of Appeals, the testimony of witnesses in open court and the arguments of counsel, the Court is of the opinion that Mr. Martin should pay Mrs. Owen the sum of Six Hundred Ninety Dollars ($690.00) per month. The Court arrived at this figure by accepting the rental value as testified to by Mr. John Quinnan, Mrs. Owen's expert witness as to rental value, as Nine Hundred Fifty Dollars ($950.00) per month and subtracting therefrom the amount of Two Hundred Sixty Dollars ($260.00) as the value of the garage apartment, as testified to by Mr. Murray Huber, Mr. Martin's expert witness on rental value.

> The Court is further of the opinion that Mrs. Owen should have judgment against Mr. Martin in the amount of Sixteen Thousand Five Hundred Sixty Dollars ($16,560.00) representing the amount Mr.

---

[5] $3,000 of that judgment represented the amount that Mr. Martin realized from the sale of the Flutter Wheel inventory. $35,911 represented Ms. Owen's equity in the house.

Martin owes Mrs. Owen from her vacating the premises on September 15, 1999 through September 14, 2001. No pre-judgment interest shall be allowed on this amount.

On September 19, 2001, Mr. Martin filed a Motion to Alter or Amend the Order. Ms. Owen responded to Mr. Martin's Motion on October 12, 2001. A hearing on the Motion was held on November 13, 2001 and an Order denying the Motion was entered on November 13, 2001.

Mr. Martin appeals from this Order and raises the following issues for our review, as stated in his brief:

I. Whether the Chancellor erred in failing to determine that the corpus of the resulting trust was the Appellee's equitable interest, thus, finite in amount.

II. Whether the Chancellor erred by finding that the monthly payments would not cease upon exhaustion of the corpus of the resulting trust.

III. Whether the Chancellor erred by not finding that some or all of Owen's equitable interest had inured to her benefit during occupation of the property.

IV. Whether the trial court erred in awarding a judgment to Appellee in the amount of Sixteen Thousand Five Hundred Sixty Dollars ($16, 560.00).

Since this case was heard by the Chancellor sitting without a jury, we review the case ***de novo*** upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d).

**Whether the Chancellor erred in failing to determine that the corpus of the resulting trust was Ms. Owen's equitable interest, thus finite in amount.**

From our reading of the record, there appears to be some confusion, or overlapping, between the purpose of the resulting trust and what constitutes the corpus of the resulting trust. The pertinent portions of our previous opinion read as follows:

In acquiring clear legal title to the home...Mr. Martin did not thereby erase Ms. Owen's *equitable interest* in the property. That *interest* can be protected by the use of a resulting trust.

-4-

     \*        \*       \*

  It thus appears to us that Mr. Martin acquired the *equity* in the house on Noonan Drive subject to the beneficial interest of Ms. Owen, and that the *equity* must inure to her benefit.

     \*        \*       \*

  In order to accomplish the *purpose* of the trust ([that purpose being to provide] shelter to Ms. Owen *from proceeds of her interest in her former residence*)....

*Owen v. Martin* at \*14-15 (emphasis added).

  While the purpose of the resulting trust is to provide shelter for Ms. Owen, a close reading of our previous opinion shows that the corpus of the trust consists of Ms. Owen's equity in the Property. The record indicates that Ms. Owen's equity in the Property is $35,911.20. That finite amount is the full corpus of the resulting trust and Mr. Martin's obligations cannot exceed that amount.

**Whether the Chancellor erred by not finding that
some or all of Owen's equitable interest inured
to her benefit during her occupation of the property.**

  Mr. Martin argues that he has fulfilled most, if not all, of his obligation to Ms. Owen by paying the mortgage and expenses for the Property while she lived there, without paying rent, from January 14, 1993 until September 15, 1999. While Mr. Martin's argument is not without merit, we find that he has partially waived his right to rental payments from Ms. Owen for these eighty (80) months she resided at the Property.

  In *Knoxville Rod & Bearing, Inc. v. Bettis Corp*., 672 S.W.2d 203 (Tenn. Ct. App.1983), this Court, in considering the issue of waiver, said:

  In *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384 (1942), our Supreme Court, quoting from a Massachusetts case, stated:

  "Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts

and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive."
178 Tenn. at 665, 162 S.W.2d at 389.

The acts or course of conduct referred to "must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver." ***Gitter v. Tennessee Farmers Mutual Insurance Company***, 60 Tenn.App. 698, 450 S.W.2d 780, 784 (1969)....

672 S.W.2d at 208.

Concerning the proof required to establish waiver, this Court said in ***Webb v. Board of Trustees of Webb School***, 271 S.W.2d 6 (Tenn. Ct. App. 1954): "[Tennessee cases] uniformly hold that there must be absolute action or inaction inconsistent with the claim or right in order to constitute waiver by conduct."

In reviewing the entire record, we find that Mr. Martin was inactive in seeking rental payments from Ms. Owen. This inactivity constitutes a waiver of his right to those payments. However, on July 15, 1997, Mr. Martin sent Ms. Owen a letter giving her the option of paying rent or vacating the property.[6] The letter reads in pertinent part as follows:

I [Mr. Martin] can offer you [Ms. Owen] two options:

1. Move into the part of the house beyond the door adjacent to the fridge, in the kitchen, providing you with a bath, kitchen, a bedroom and living area for $250.00 per month including utilities, or

2. Vacate the house allowing me to sell it.... I need your answer by July 24th (97)...

Based upon the July 15, 1997 letter, we hold that Mr. Martin ceased to waive his right to rental payments as of the July 24, 1997 (the deadline specified by the letter). From July 24, 1997 until September 15, 1999 (the date Ms. Owen vacated the Property), Mr. Martin was entitled to $250 per month in rent from Ms. Owen. We now turn to a calculation of the rental amount due Mr. Martin for this period of time:

July 24, 1997 until July 31, 1997 = 8 days @ $8.06/day = $64.48
August 1, 1997 until August 31, 1999 = 25 months @ $250/month = $6,250.00
September 1, 1999 until September 15, 1999 = 15 days @ $8.33/day = $124.95

---

[6] Although there is some indication in the record that Mr. Martin was in negotiations with Ms. Owen prior to his letter of July 15, 1997, there is nothing to indicate the exact nature of these negotiations or whether he made demand for rental payments prior to sending the letter.

**Total rent due Mr. Martin = $64.48 + $6,250 + $124.95 = $6,439.43**

Based upon the foregoing calculations, the corpus of the trust, which is $35,911.20 should be reduced by $6,439.43. Mr. Martin's obligation to Ms. Owen is, therefore, $29,471.77.

Issue two and four are absorbed in the discussion of issues one and three. The only question remaining is how the judgment is to be paid. The judgment of the trial court is modified to award plaintiff-appellee Twenty Nine Thousand Four Hundred Seventy-One Dollars and Seventy-Seven Cents ($29,471.77) as the remaining equity in the property to be paid by defendant as required by the trial court with an initial payment of Sixteen Thousand Five Hundred Sixty Dollars ($16,560.00), and the remaining Twelve Thousand Nine Hundred Eleven Dollars and Seventy-Seven Cents ($12,911.77) payable in Eighteen (18) monthly installments of Six Hundred Ninety Dollars ($690.00) and one final installment of Four Hundred Ninety One Dollars and Seventy-Seven Cents ($491.77) until the total equity amount of Twenty Nine Thousand Four Hundred Seventy-One Dollars and Seventy-Seven Cents ($29,471.77) is paid in full, beginning thirty (30) days after the date of the filing of this Opinion. At the option of the appellant, the judgment of Twenty Nine Thousand Four Hundred Seventy-One Dollars and Seventy-Seven Cents ($29,471.77), or any remaining balance thereof, may be paid in full at any time. The judgment of the trial court is affirmed, as modified. The costs of the appeal are assessed one-half to the appellant, William C. Martin, III, and his surety, and one-half to the appellee, Audrey J. Owen.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE
WESTERN SECTION