STOVALL OF CHATTANOOGA,
INC., Plaintiff–Appellant,

v.

Robert B. CUNNINGHAM, Donald R.
Cunningham and Diana L. Cunningham
d/b/a Tri–State Engine Service and Tri–
State Lawn and Garden, Defendants–Appellees.

C.A. No. 03A01–9401–CV–00028.

Court of Appeals of Tennessee,
Western Section.

June 16, 1994.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 31, 1994.

Brian M. House of Duncan & Mickles, Chattanooga, for appellant.

Fielding H. Atchley, Jr. of Dietzen & Atchley, Chattanooga, for appellees.

CRAWFORD, Judge.

This is essentially a suit on a guaranty agreement. Plaintiff, Stovall of Chattanooga, Inc. (hereinafter referred to as plaintiff or Stovall), appeals from the judgment of the trial court on a jury verdict for defendant, Robert B. Cunningham[1] (hereinafter referred to as defendant or Cunningham). The first issue for review is whether the trial court erred in denying plaintiff's motion for a directed verdict made at the conclusion of all of the proof.

---

1. Suit was originally filed against defendant, Robert B. Cunningham, Donald R. Cunningham and Diana L. Cunningham. We cannot find in the record on appeal a disposition of the case as to defendants Donald R. Cunningham and Diana L. Cunningham. However, the record does contain a suggestion of bankruptcy as to these parties and since the case was tried and submitted to the jury as a suit against Robert B. Cunningham only we assume that an appropriate order was entered in the trial court and inadvertently omitted from the record on appeal.

In 1988 and prior thereto, Cunningham operated a sole proprietorship business known as Tri–State Engine Service. On May 31, 1988, Cunningham entered into "Dealer Liability Agreement" with Stovall, a distributor for Snapper Power Equipment, whereby Cunningham became Stovall's dealer for the selling and servicing of Snapper Lawn and Garden Equipment. The agreement, as pertinent to the issue before the Court, provides:

### DEALER LIABILITY AGREEMENT

The undersigned are all the owners or shareholders of the business known as Tri–State Engine Service, and as a part of the application for dealership with Stovall of Chattanooga, Inc., Chattanooga, Tennessee, do hereby agree as follows:

\*   \*   \*   \*   \*   \*

### DEALERSHIP AGREEMENT

We and each of us acknowledge and agree that as a part of the consideration passing to Stovall of Chattanooga, Inc. for granting a dealership, and as inducement for Stovall of Chattanooga, Inc. to sell any item of merchandise to us or any of us, or our corporation, we hereby agree that:

1. We and each of us do hereby jointly and severally guarantee payment of any debt that becomes due to Stovall of Chattanooga, Inc., which may arise out of the operation of such dealership by our business or corporation.

2. We and each of us shall jointly and severally remain liable for any debt which becomes due to Stovall of Chattanooga, Inc. arising from the operation of such dealership, and that Stovall of Chattanooga, Inc. may look to us for payment regardless of any change in ownership of our business or whether we or any of us continue to take an active part in the business, or whether or not we remain stockholders in the corporation.

3. This continuing liability shall remain in full force and effect until receipt by Stovall of Chattanooga, Inc. of written notice that we shall no longer be responsible for any debt to become due to Stovall of Chattanooga, Inc; and such notice shall only relieve the party giving notice and then only for the liability for any such debts that have not been incurred to the date of receipt of such notice.

\*   \*   \*   \*   \*   \*

Although Stovall disputed the extent of its knowledge concerning any transfer of ownership by Cunningham, there was proof from defendant Cunningham and Donald and Diana Cunningham that in October of 1990, Jimmy Rogers, Stovall's sales representative, called on Tri–State to take the 1991 spring order. At that time, Rogers was informed that Cunningham had sold the business to Don Cunningham, that Robert Cunningham was "no longer involved," that Don Cunningham was the responsible party and that all the purchasing as well as any other matters would be handled by Don. Rogers acknowledged the information and took a substantial order from Don. Diana Cunningham also testified that after Rogers took the spring order, she asked him whether there was anything else Don needed to sign concerning his responsibility. Rogers responded that there was nothing else that Don needed to do.

After this order was taken, Stovall dealt exclusively with Don Cunningham, and Robert Cunningham had nothing to do with the business. Subsequently, in October of 1991, Don and Diana Cunningham filed Chapter 13 bankruptcy. The petition listed Stovall as a secured creditor, and Stovall filed a claim. The petition also showed Robert B. Cunningham as a co-debtor, and the claim filed by Stovall also showed Robert B. Cunningham as a co-maker.

Robert Cunningham testified that he did not at any time give Stovall "written notice" that he would "no longer be responsible for any debt to become due." Based upon this testimony, Stovall moved for a directed verdict at the conclusion of the proof. While conceding that no written notice was given as required by the dealer liability agreement, Cunningham asserted that the provision of the contract requiring written notice was waived by Stovall. The trial court denied Stovall's motion for directed verdict and submitted the case to the jury primarily on the

issue of whether there was a waiver of the written notice provision.

■ The rule for determining whether to grant a motion for directed verdict requires the trial judge and the reviewing court to look to all the evidence, taking the strongest legitimate view of it in favor of the opponent of the motion and allowing all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the trial court must deny the motion. *City of Bartlett v. Sanders,* 832 S.W.2d 546 (Tenn.App.1991).

■ The parties concede that T.C.A. § 47–2–209 (1992) is applicable to this case. The statute provides as pertinent to the issue before us:

**47–2–209. Modification, rescission and waiver.**—(1) An agreement modifying a contract within this chapter needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this chapter (§ 47–2–201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

\* \* \* \* \* \*

It is clear from the language of the dealer liability agreement that Cunningham not only agreed to be liable for his purchases from Stovall, but also guaranteed the payment of purchases made by successors in interest until Stovall was notified to the contrary. Cunningham concedes that this is so, but argues that there was proof in this case that Stovall waived the requirement of written notice.

In *Knoxville Rod & Bearing, Inc. v. Bettis Corp.,* 672 S.W.2d 203 (Tenn.App.1983), this Court, in considering the issue of waiver, said:

In *Baird v. Fidelity–Phenix Fire Ins. Co.,* 178 Tenn. 653, 162 S.W.2d 384 (1942), our Supreme Court, quoting from a Massachusetts case, stated:

"Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive."

178 Tenn. at 665, 162 S.W.2d at 389.

The acts or course of conduct referred to "must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver." *Gitter v. Tennessee Farmers Mutual Insurance Company,* 60 Tenn.App. 698, 450 S.W.2d 780, 784 (1969)....

672 S.W.2d at 208.

Concerning the proof required to establish waiver, this Court said in *Webb v. Board of Trustees of Webb School,* 38 Tenn.App. 173, 271 S.W.2d 6 (1954):

[Tennessee cases] uniformly hold that there must be absolute action or inaction inconsistent with the claim or right in order to constitute waiver by conduct.

It is further held that waiver of a legal right must be evidenced by a clear, unequivocal and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part, and that it cannot be made out by acts of uncertain implication, but ought to clearly appear in order to constitute a waiver of the contract benefit. Our courts have sometimes said there must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended. *Ross v. Swan,* 75 Tenn. 463;

*Koontz v. Fleming,* 17 Tenn.App. 1, 65 S.W.2d 821; *Charleston, S.C., Mining & Mfg. Co. v. American Agricultural Chemical Co.,* 126 Tenn. 18, 150 S.W. 1143.

In *Moss v. Aetna Life Ins. Co.,* 6 Cir., 73 F.2d 339, 341, it is said that the waiver must be intended by one party and so understood by the other.

271 S.W.2d at 19.

In the case at bar, viewing the proof in a light most favorable to the defendant, it is established (1) that defendant sold the business to his son, (2) that Stovall's salesman was told that the business was sold to the son, (3) that the son would be responsible from then on, (4) that the son would make the decisions and do the buying, and (5) that the defendant would have nothing further to do with the business. There is absolutely no proof of any action on the part of Stovall to indicate that Stovall intended to relinquish any rights it had against the defendant.

Apparently, defendant's theory is that Stovall's silence after being told of the sale of the business to the son, constitutes the waiver. We cannot agree with this conclusion. The nature of the agreement itself; that is, a continuing guaranty agreement that specifically provides for the liability of the guarantor after the sale of the business unless the guarantor takes affirmative action to eliminate that liability, negates such a conclusion. The fact that someone has purchased the business and Stovall looks to the new owner for primary liability does not create any implication of an intent to release the original guarantor. To the contrary, the proof in this case that Don Cunningham was not required to sign a Dealer Liability Agreement is strong indication that Stovall was relying on defendant's liability. There is simply no proof in this record of any facts that would constitute a waiver of the contractual provision on the part of Stovall. Consequently, there was nothing for the jury to decide on that issue, and the trial court should have granted the motion for directed verdict.

Defendants conceded that the remaining balance due Stovall was $33,304.05. The contract also called for reasonable attorney fees, and Stovall introduced proof that the amount of $11,141.35 constituted a reasonable attorney fee. However, since the contract called for a reasonable fee, the court must consider the proper guidelines for determining what constitutes a proper fee. *Wilson Management Co. v. Star Distrib.,* 745 S.W.2d 870 (Tenn.1988). The award will depend upon the weight, faith and credit the trier of fact accords to the testimony concerning these various factors. The jury did not reach this issue due to its verdict for the defendant.

Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court for entry of a judgment for plaintiff in the amount of $33,304.05. A new trial is granted on the issue of attorney fees only. Costs of the appeal are assessed against the appellee.

HIGHERS and FARMER, JJ., concur.