IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

October 1, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| JAMES SLYMAN | ) | HAMILTON COUNTY |
| | ) | 03A01-9703-CV-00094 |
| Plaintiff-Appellee | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. SAMUEL H. PAYNE, |
| | ) | JUDGE |
| | ) | |
| NATIONAL KNIFE COLLECTORS | ) | |
| ASSOCIATION | ) | |
| | ) | |
| Defendant-Appellant | ) | AFFIRMED AND REMANDED |

WILLIAM R. HANNAH OF CHATTANOOGA FOR APPELLANT

ERSKINE P. MABEE OF CHATTANOOGA FOR APPELLEE

O P I N I O N

Goddard, P.J.

In this jury case, National Knife Collectors Association appeals a $5000 judgment rendered against it in favor of James Slyman, raising the following two issues on appeal, neither of which questions the amount of the award:

1.      Whether the Trial Court erred in failing to hold as a matter of law that plaintiff could not recover against defendant for defamation.

2.    Whether the Trial Court erred in failing to hold as a matter of law that the 90/10 rule was not selectively enforced.

The complaint sought damages against the Association and its President, Bob Cargill,[1] upon two theories.  The first was libel, and the second breach of contract.  The libel theory stems from an altercation between Mr. Cargill and Mr. Slyman, occurring on September 25, 1994, when Mr. Cargill accosted Mr. Slyman with regard to Mr. Slyman's conversation the day before with Lisa Broyles, who was employed by the Association as an editor of its magazine and manager of its museum  The conversation with Ms. Broyles concerned Mr. Slyman's belief that the advertising for a show being held in Louisville, Kentucky, was insufficient.

As already noted, Mr. Cargill confronted Mr. Slyman regarding his treatment of Ms. Broyles.  This resulted, according to Mr. Cargill, in his being physically assaulted by Mr. Slyman, an accusation which Mr. Slyman steadfastly denied.

Subsequent to the confrontation, which occurred on September 24, 1994, Mr. Cargill, on behalf of the Association, sent a letter to Mr. Slyman dated October 11, 1994, which stated the following:

---

[1]    Mr. Cargill was exonerated by the jury.

2

> Due to your continual refusal to comply with the NKCA show rule that 90% of your merchandise must be knives, and your physical attack on me at the recent Louisville NKCA Knife Show, you will not be allowed to set up at any NKCA Shows until further notice.

The predicate for the libel suit is the statement in the letter accusing Mr. Slyman of a physical attack. Copies of the letter were sent to the chairman of shows to be held in Cincinnati, Ohio, Springfield, Illinois, and Chattanooga.

Although almost all of the parties' briefs are directed to the issue of libel, we believe, for the reasons hereinafter set out, the second issue is dispositive of this appeal.

With regard to the second issue, the Association has what is known as a 90-10 Rule, which is set out in its Policies and Procedures:

> III-5.2    Dealer shall agree that 90% of the displayed merchandise shall be cutlery or cutlery related materials. Any exceptions to this agreement must have prior approval of the show chairman/manager.

The evidence is in dispute as to whether other exhibitors were allowed to violate this Rule with impunity, as was Mr. Slyman until the confrontation between him and Mr. Cargill regarding Mr. Slyman's treatment of Ms. Broyles.

3

Although, as already noted, the complaint sought damages for breach of contract, the case was tried on the theory that the Association selectively enforced the rule by penalizing him for non-compliance, but not other exhibitors, and also on the theory that because the Association had allowed him to violate the rule in times past he was entitled to reasonable notice that in the future the rule would be enforced.

As a result, Mr. Slyman was not able to participate in their future exhibits held in Cincinnati, Springfield, and Chattanooga, for which he had already paid a fee. Although ultimately the fee was returned by Mr. Cargill's letter of October 11, Mr. Slyman nevertheless contends he suffered damages as a result of being barred from displaying his wares, for which he sues.

We first note that under similar circumstances the Supreme Court held in Lively v. Drake, 629 S.W.2d 900 (Tenn. 1982), that a debtor, whose installment loan was secured by a deed of trust, was entitled to a reasonable notice from the lender that the irregular payments heretofore accepted must be made in accordance with the note evidencing the indebtedness before foreclosure of the property could be accomplished. In reaching this conclusion the Supreme Court said the following (at page 903):

4

It is also settled, however, that as a result of a course of dealing between parties, the holder of an indebtedness may be deemed to have waived the right to accelerate without giving prior notice to the debtor of his intention to do so. As stated by the Court of Appeals:

> "There is another theory upon which the Chancellor's determination might be sustained, viz.: the conduct of the parties has been such that an implied modification of the terms of the agreement existed, by which the debtor was allowed to miss payments from time to time, and until the creditor gave actual notice of his intent to rely on the old terms no default and foreclosure could be accomplished."

The theory of selective enforcement and lack of notice is demonstrated by the following charge to the jury by the Trial Court, which was not objected to by the Association:

> They also take the position that he is the only one that they've ever applied this 90-10 rule to. Now, you've heard the evidence from both sides. Now, ladies and gentlemen of the jury, both are responsible to read the bylaws, there is no defense of law that says you haven't read the bylaws or haven't read the rules. If you did, you understand, we'd have lawsuits every day, say, "Here's the contract, I didn't read it."
>
> That's no excuse, you better read it if you join some organization because you're held responsible for it under the law, but both sides are responsible, he's responsible to read that and so is the corporation.
>
> Now, the corporation has a right to enforce that rule, they can't enforce it selectively, that's against one individual and no others. If they've applied this rule to everybody consistently, then they're entitled to tell him he can pack his tent and go, he hasn't complied. If they haven't, you buy their theory he's the only one they've applied it to, that's selective. And if you let that rule be violated over a series of times, that's considered a waiver and the only way you can reinstitute the rule is to notify all, "Look, we haven't enforced this rule, it hasn't been in effect, we're going to give everybody one month to get yourself

5

back in shape, after that we'll enforce this rule." If they do that, they can enforce it.

They may not have waived the rule at all, it's something you have to decide, I'm giving you what you have to do.

Additionally, the jury had some questions regarding this theory, as shown by the colloquy occurring after the jury had deliberated for a period of time:

A JURY MEMBER: Also you had in your instruction something about the selective enforcement of a rule which almost is like another issue.

THE COURT: It is, there are two theories of recovery, you're right. You can --

A JURY MEMBER: In other words, if it's not libel--

THE COURT: If you find it -- if you found it was selective enforcement, there could be recovery on that.

A JURY MEMBER: Does anybody want to ask questions about that because I guess we just thought that first we had to decide if there was a libel.

THE COURT: That's a good approach, you can take it that way --

A JURY MEMBER: But there are two separate issues?

THE COURT: Remember, on selective enforcement they have bylaws and that's where the 90-10 rule was entered. What I'm telling you, both sides are charged with the reading of that, being aware. Whether they did it or not, that's no excuse to say, "I didn't know about it." And if they have been systematically warning other people all this time and telling them, "Get in line, get in line," if they don't' they can put him out, he has to go.

Where the problem is if they haven't been doing that, if they hadn't been telling other people, "Get in line," and suddenly just picked on him, then that's selective enforcement and then in that sense they would

6

be waiving the 90-10 rule, and the only way they could enforce it, then they would have to send out something telling everybody, "Look, the 90-10 rule is in there, we've been ignoring it lo these many years. As of such and such a date you all are out of here." You all have to decide if they've been doing it to everybody else. If they do, they have a right.

A JURY MEMBER: Let me point out what one juror has said, the 90-10 rule doesn't have in it the punishment of banishing him from the shows, that the 90-10 rule says the person may be asked to remove the offending merchandise, but it says --

A JURY MEMBER: Can I ask a question?

THE COURT: If they asked you time and time again, they have a right to put you out, they don't have to keep taking you out.

A JURY MEMBER: The selective enforcement has to do with just warnings, if they are making simple warning but never actually --

THE COURT: If everybody else got in line, what else would you do? Their theory is everybody else has to get in line, this guy didn't get in line, we can't punish them for that if you believe that. Now, that's a question of fact again whether or not that was done. He says it wasn't, their side said no -- yes, it was.

You've heard both sides, you have to decide whether they've been don't it all along. Like I was saying, you can't speed, you only arrest speeders, not everybody else. If they tell these people slow down, they all slow down, then you don't arrest them, you only get the guy who doesn't. That make any sense?

A JURY MEMBER: The thing we've been wrestling with, as he said earlier, the punishment was that they would have to pare down to the 90-10 rule, it's not you can't show, future shows.

THE COURT: They have a right, if they have a 90-10 rule you have to have 90 percent cutlery, he doesn't, they have a right to say, "You cannot show, period, you can pack your tent and go." The rule wouldn't be any good if it didn't.

MR. MABEE: they can't selectively --

THE COURT: They can't selectively. I thought I made that point, they can't just pick him That's the big argument in the case, they said, "Sure, we've done

7

it, we've done it with everybody else." You remember, I think, some of the testimony, I can't recall it all, you have to recall, "Why didn't you kick everybody else out?"

"The other guys either got in line or quit or something." You all have to remember what they said.

We conclude that there is material evidence to support the alternate theories of Mr. Slyman, and because they were tried by implied consent, which is appropriate under Rule 15.02 of the Tennessee Rules of Civil Procedure, and because the jury returned a general verdict, T.C.A. 20-9-503,[2] the effect of which was to decide each issue in favor of the Plaintiff if supported by material evidence, General Motors Corporation v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655 (1960); Rural Educational Association v. Bush, 42 Tenn.App. 34, 298 S.W.2d 761 (1957), the verdict of the jury and the judgment entered thereon must be sustained.

In conclusion, we point out that we have not overlooked the contention in the Association's brief that no waiver occurred because the elements necessary for such have not been established:

A waiver is the voluntary relinquishment of a known right. Baird v. Fidelity-Phoenix Fire Ins. Co., 178 Tenn. 653, 162 S.W.2d 384, 389 (1942); Stovall of Chattanooga v. Cunningham, 890 S.W.2d 442, 444 (Tenn.App. 1994). The waiver of a contractual right

---

[2] 20-9-503. Scope of general verdict.-- A general verdict, although it may not in terms answer every issue joined, is nevertheless held to embrace every issue, unless exception is taken at the term at which the verdict is rendered.

must be clear and unequivocal. <u>Patten v. Bearden</u>, 8 F.3d 343, 346 (6th Cir.1993) [copy attached]. There can be no waiver unless it was an intentional, express act or one party so acted as to mislead the other. <u>Trotlinger v. East Tn. V. & Gr. Co.</u>, 79 Tenn. (11 Lea) 533, 538 (1883). In order to constitute a waiver of a condition of a contract, there must be consideration or estoppel. <u>Bokor v. Holder</u>, 722 S.W.2d 676, 680 (Tenn.App.1986); <u>Moore v. Nashville Union Stockyards</u>, 69 Tenn. 638, 90 S.W.2d 524, 527 (Tenn.1936).

These, of course, are all elements of classic legal waiver. However, we believe the word "waiver" in <u>Lively</u> is not used in this sense, but rather in the sense of acquiescence, which is also occurred in the case at bar.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgment and costs below. Costs of appeal are adjudged against the Association and its surety.

_____
Houston M Goddard, P.J.

CONCUR:


_____
Don T. McMurray, J.


_____(Not Participating)_____
Charles D. Susano, Jr., J.

9