IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2003 Session

# DR. BRIAN E. BACARDI v. TENNESSEE BOARD OF REGISTRATION IN PODIATRY

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 01-1426-III     The Honorable Ellen Hobbs Lyle, Chancellor**

---

**No. M2002-00558-COA-R3-CV - Filed May 30, 2003**

---

This is an appeal from a final order, upholding the validity of a settlement agreement. Appellant, a podiatrist, entered into a settlement agreement with the Tennessee Board of Registration in Podiatry. The settlement agreement contained a provision whereby Appellant voluntarily relinquished his right to reapply for a podiatry license in Tennessee. Upon discovering that loss of the right to apply for license barred participation in all federal health care programs, Appellant sought to have the provision excised from the agreement on the basis that the Board had no statutory authority to mandate a bar on application for a license. The trial court upheld the validity of the settlement agreement. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

W. Gary Blackburn, Nashville, For Appellant, Dr. Brian E. Bacardi

Paul G. Summers, Attorney General and Reporter; Sara E. Sedgewick, Assistant Attorney General, Nashville, For Appellee, Tennessee Board of Registration in Podiatry

**OPINION**

Effective February 1995, Bacardi voluntarily retired his license to practice podiatry in Tennessee. On March 13, 1995, the Department of Health filed a Notice of Charges (the "Notice") against Dr. Brian E. Bacardi ("Bacardi," "Respondent," or "Appellant").[1] The Notice alleged

---

[1] As early as September 18, 1990, the Department of Health received numerous complaints against Bacardi for various violations of the Tennessee Podiatry Act, T.C.A. §§ 63-3-101, *et seq.* Among the charges brought were allegations that Bacardi had treated non-podiatric problems; that Bacardi made a post-operative charge for pads and
(continued...)

numerous violations and sought suspension, revocation, or other discipline of Bacardi's podiatry license. Furthermore, the Notice proposed civil penalties against Bacardi in the aggregate amount of sixteen thousand dollars ($16,000.00). On January 24, 1996, Bacardi and the Board of Registration in Podiatry (the "Board," or "Appellee") entered into a Settlement Agreement (the "Agreement"). This Agreement reads, in pertinent part, as follows:

## FINDINGS OF FACT

1. The Respondent has, by his signature on this Agreement, waived his right to a contested case hearing and any and all rights to judicial review in this matter.

2. The Respondent agrees that presentation to and consideration of this Agreement by the Board for ratification and all matters divulged during that process shall not constitute unfair disclosure such that the Board or any of its members shall be prejudiced to the extent that requires their disqualification from hearing this matter should this Agreement not be ratified. Likewise, all matters, admission[s] and statements disclosed or exchanged during the attempted ratification process shall not be used against the Respondent in any subsequent proceeding unless independently entered into evidence or introduced as admissions.

3. On March 13, 1995, a Notice of Charges was filed against Respondent which contained allegations which, if proven at hearing, would constitute violations of the Podiatry Practice Act.

4. Respondent admits that the Tennessee Board of Registration in Podiatry has jurisdiction in this matter and that had the matter gone to hearing and had the allegations been proven, the Board would have the authority to discipline Respondent's license to practice podiatric medicine.

5. Respondent was duly served with a copy of the aforementioned Notice of Charges and retained legal counsel who reviewed the charges with him.

---

[1](...continued)

splints when he had only changed the patient's dressings and removed the bandages but had reused the same pad; that Bacardi performed podiatical surgical procedures on a patient without having obtained a valid consent; that Bacardi billed a patient for procedures that were not performed; that Bacardi charged an individual, without providing any treatment, for an initial comprehensive history and physical, and rendered a diagnosis of onychomycosis; that Bacardi performed surgery on a patient's third toe in addition to performing surgery on the patient's fourth and fifth toes, although there was no prior pathology for the third toe noted or documented.

6. Respondent understands that he has a right to a hearing on the charges and waives his right to a hearing in consideration of this Agreement which constitutes full and final settlement of the pending matter.

7. Effective February 1995, Respondent voluntarily retired his license to practice podiatry in the State of Tennessee.

## CONCLUSIONS OF LAW

Any person licensed to practice by the provisions of this chapter, who has retired or may hereafter retire from such practice in this state, shall not be made to register as required by this chapter if such person shall file with this board an affidavit on a form to be furnished by the board, which affidavit states the date on which such person retired from such practice and such other facts as shall tend to verify such retirement as the board shall deem necessary. If such person thereafter reengages in such practice in this state, such person shall apply for registration with the board as provided by this chapter, and shall meet other requirements as may be set by the board. T.C.A. §63-3-116(c).

## REASONS FOR DECISION

The Respondent does not wish to practice podiatry in Tennessee and has retired his license. He contends that he is innocent of the charges and enters this Agreement as the most expedient and cost effective manner of resolving the charges. Under this Agreement, the Respondent will not practice podiatry in the State of Tennessee.

It is therefore AGREED:

1. Entry of this Agreement shall not constitute an admission of the allegations in the Notice of Charges.

2. The Respondent will not reactivate his Tennessee license to practice podiatry or apply for registration with the Board pursuant to T.C.A. §63-3-116(c) or any other provision of the Podiatry Practice Act (T.C.A. §63-3-101 et seq.).

3. Respondent hereby waives any right to a contested case hearing.

4. Breach of this Agreement would be grounds for discipline by the Board pursuant to T.C.A. §63-3-119(a)(8).

SO ORDERED, this 24 day of January, 1996, by the Tennessee Board of Registration in Podiatry.

/S/
Chairman, Tennessee Board of Registration
in Podiatry

Approved for entry by:

/S/ Brian E. Bacardi                     12-4-95
Brian E. Bacardi, D.P.M.            Date
Respondent

/S/ Amanda G. Crowell            /S/ William B. Hubbard
Amanda G. Crowell (#015413)  William B. Hubbard (#2770)
Assistant General Counsel         Attorney for Respondent
Department of Health                Weed, Hubbard, Berry & Doughty
11th Floor, Tennessee Tower      Third National Financial Center
312 Eighth Avenue North          424 Church Street, Suite 2900
Nashville, Tennessee 37247       Nashville, Tennessee 37219
(615) 741-1611                        (615)251-5444

This Order was received for filing in the Office of the Secretary of State, Administrative Procedures Division, an[d] became effective this 24th day of January, 1996.

/S/ Charles C. Sullivan, II
Charles C. Sullivan, II, Director
Administrative Procedures Division

Bacardi moved to Illinois and began practicing there. In January 1999, he received notice from the United Stated Department of Health and Human Services (dated February 7, 1998) that he was disqualified from participating in Medicare, Medicaid, and all federal health care programs pursuant to §1128(b)(4) of the Social Security Act, 42 U.S.C. § 1320A-7(b). The basis for his disqualification from participating in these federal programs was the fact that he was prohibited from applying for licensure pursuant to Paragraph Two of the Agreement.[2] On August 25, 2000, Bacardi filed a Petition to Set Aside Agreement (the "Petition"). Bacardi subsequently

---

[2] § 1128(b)(4) of the Social Security Act provides that individuals "whose license to provide health care has been revoked or suspended by any State licensing authority, or who otherwise lost such license or the right to apply..." may be excluded "from participation in any Federal health care program." 42 U.S.C. § 1320a-7(b).

filed two separate amended petitions to set aside the Agreement, in which he asserted that the Agreement should be deemed unlawful and a nullity because the Board did not have authority to restrict his right to reapply for his podiatry license in Tennessee; that the Board did not have jurisdiction to discipline him; and that the Agreement had been entered into by mutual mistake.[3] By Order dated September 13, 2000, Administrative Law Judge Thomas G. Stovall declined to rule on Bacardi's Petition. Citing the fact that the file of the Administrative Procedures Division had been closed since January 24, 1996, Judge Stovall concluded that there was no longer a contested case pending and that no further relief could be afforded under the Administrative Procedures Act. Judge Stovall forwarded the matter to the Board for consideration. By agreement of the parties, the Petition was handled as a contested case.

Bacardi's petitions to set aside the Agreement were heard by the Board on January 12, 2001. The Board entered its Order on March 27, 2001, which reads, in relevant part, as follows:

FINDINGS OF FACT

1. That the State of Tennessee, Department of Health filed Notice of Charges against the Respondent, Brian E. Bacardi, D.P.M, on March 13, 1995 based on allegations that he had practiced outside the scope of practice for podiatrists; that he had charged patients for services not rendered so that he could be compensated by insurance companies for his time; that he performed surgical procedures on patients without obtaining the patient's consent; and, that he was performing unnecessary medical procedures on patients. As a result of these allegations, the Respondent was charged with various violations of the Tennessee Podiatry Practice Act, pursuant to T.C.A. § 63-3-101 et seq., for which disciplinary action before and by the Board of Registration in Podiatry is authorized.

2. As a result of the Notice of Charges filed against the Respondent, he obtained legal counsel and in fact was represented by two (2) attorneys at the time he entered into the Agreement on January 24, 1996 with the State to resolve the charges contained therein.

3. That the Respondent-Petitioner agreed to waive a contested case hearing and also agreed that he would not reactivate his retired license to practice podiatry or make application for registration with the Board pursuant to T.C.A. § 63-3-116(c) or any other provision of the Podiatry Practice Act pursuant to T.C.A. §§ 63-3-101 et seq. Said agreement made by the Respondent-Petitioner is contained in the

_____

[3] The amended petitions were dated November 16, 2000 and November 30, 2000.

Agreement entered January 24, 1996 and is the same agreement that the Respondent-Petitioner is seeking to set aside.

4. On August 25, 2000, the Respondent filed a Petition to Set Aside Agreement. The State moved to dismiss said petition and Order was subsequently issued by the Administrative Procedures Division declining to rule on either pleading. Subsequent to this time, the Respondent filed an Amended Petition to Set Aside Agreement on November 16, 2000.

5. That the Respondent-Petitioner has been excluded from participating in Medicare, Medicaid and all federal health care programs pursuant to Section 1128(b)(4) of the Social Security Act.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Board addresses the two (2) issues presented by this case. The first issue is whether the Board had jurisdiction to discipline a retired license. The Board finds that a "retired license" reflects only the status of the license. Pursuant to T.C.A. § 63-3-116, a retired license is capable of being reactivated by the licensee therefore; the Board has jurisdiction to discipline the license holder for violations of the Practice Act for Podiatry.

The second issue is whether or not the board of Podiatry has the authority to prevent an individual from making application for a license to practice podiatry in the State of Tennessee. The Board finds that it does have the authority to preclude an individual from making application for a license. Pursuant to T.C.A. § 63-3-106(1), the Board is empowered to "[a]dopt and promulgate rules and regulations as may be necessary to govern its proceedings and to carry into effect the purpose of this chapter...." As a result of its rule making authority, the Board promulgated Rule 1155-2.15(1)(e)(2) which provides, "Revocation for Cause. This is the most severe form of disciplinary action which removes an individual from the practice of the profession and terminates the license previously issued. The Board, **in its discretion** (emphasis added), may allow reinstatement of a revoked license upon conditions and after a period of time it deems appropriate...." The Board is not required to allow reinstatement of a license that it revokes.

Based on the foregoing, the Board finds that it has authority to preclude an individual from making future application for a license to practice podiatry.

REASONS FOR DECISION

The Board makes its Order based on the prior Agreement signed by the Respondent five (5) years ago and entered January 24, 1996 and the Board's authority to approve said Agreement pursuant to the aforementioned cited legal authority.

IT IS THEREFORE ORDERED:

1. That the Agreement entered into by the Respondent-Petitioner herein, Brian E. Bacardi, D.P.M., with the State of Tennessee, Department of Health shall not be set aside.

Following the Board's Order, on May 3, 2001, Bacardi filed a Petition for Review pursuant to T.C.A. § 4-5-322, seeking reversal of the Board's Order and to modify or excise Paragraph Two of the Agreement.[4]  The Chancery Court of Davidson County issued its Memorandum and Order on February 13, 2002.  This Memorandum and Order upheld the validity of the January 24, 1996 Agreement and reads, in pertinent part, as follows:

After reviewing the entire record and considering the argument of counsel for both parties, the Court affirms the outcome of the decision of the Tennessee Board of Registration in Podiatry, upholding the validity of the January 24, 1996 Settlement Agreement. However, the Court differs in reasoning and holds that the Board erred, as a matter of law, in construing the settlement agreement as a license revocation.  Although this Court's legal analysis varies from that of the Board, the Court agrees that the settlement agreement in this case remains valid and in effect.  The Court's reasoning is as follows:

\*                                  \*                                  \*

[Bacardi] contends that Paragraph Two of the Agreement should be modified or excised because the Board acted outside of its statutory authority in preventing [Bacardi] from reapplying for a Tennessee license. [Bacardi] argues that because the Board's powers are statutorily circumscribed and because no statute or rule authorizes

---

[4] Paragraph Two of the Agreement reads as follows: "The Respondent will not reactivate his Tennessee license to practice podiatry or apply for registration with the Board pursuant to T.C.A. §63-3-116(c) or any other provision of the Podiatry Practice Act (T.C.A. §63-3-101 et seq.)."

the Board to prevent future reapplication for licenses, it is prohibited from entering into a settlement agreement prohibiting the same.

The [Board] contends that [the Agreement] did not unilaterally prevent [Bacardi] from reapplying. Rather, [Bacardi] signed the Agreement, in consideration of the State not pursuing allegations in the Notice of Charges, agreeing to not reactivate or reapply for a license. Furthermore, the [Board] maintains that Tennessee Code Annotated section 4-5-105 encourages the settlement of administrative matters in lieu of more elaborate proceedings. The [Board] maintains that the Board's powers are both express and implied and that because the Notice of Charges was properly brought under the UAPA, the Board possessed the implied authority to enter into a settlement agreement with [Bacardi].

Preliminarily, the Court examines the Board's finding that it has the authority, in this case, to preclude an individual from making future application for a license to practice podiatry. In support of its conclusion, the Board relies upon Rule 1155-2.15(1)(e)(2), entitled Revocation for Cause. According to the record and according to the provisions of the Agreement, [Bacardi's] license to practice podiatry in Tennessee was retired. A retired licensee, if such person reengages in the practice of podiatry in Tennessee, may reenter active status by applying for registration with the Board and completing other requirements set by the Board.... The Court finds nothing in the record to indicate that [Bacardi's] license was, or has been, revoked. Therefore, the Board's reliance upon Rule 1155-2.15(1)(e)(2) is misplaced and the Court holds, as a matter of law, that the Board, in the case at bar, lacks the authority to abrogate [Bacardi's] right to make application to reactivate his retired license.

As such, the Court turns to Paragraph Two of the Agreement to determine its validity, in keeping with the Court's determination that the Board lacks the authority to abrogate the right of a retired licensee to reapply for registration with the Board to practice podiatry in Tennessee.

In consideration of the Board agreeing to not prosecute the Notice of Charges, [Bacardi] agreed not to reactivate his Tennessee license to practice podiatry or reapply for registration with the Board.... [Bacardi] contends that Paragraph Two is illegal and invalid. Specifically, [Bacardi] construes Paragraph Two to mean that the Board is imposing discipline and punishment on [him] by removing his right to reapply for a Tennessee license. The Court finds [Bacardi's] construction of Paragraph Two to be incorrect as a matter of law.

Paragraph Two represents a voluntary conduct agreement wherein [Bacardi], in consideration of the Board not prosecuting the Notice of Charges, agrees to not exercise or assert his right to reapply for a Tennessee license to practice podiatry. In addition to the text of Paragraph Two of the Agreement, the Court's construction of the Agreement is bolstered by Tennessee Code Annotated section 4-5-105, which encourages informal settlements in order to render unnecessary more elaborate proceedings. The informal settlement of matters allows parties a forum to agree to specific terms and conditions in order to avoid penal consequences. Therefore, the Court does not construe Paragraph Two to be a waiver of [Bacardi's] right to reapply nor an imposition of punishment or discipline by the Board abrogating [Bacardi's] right to reapply...

Bacardi appeals from this Order and raises one issue for our review, as stated in his brief: "Whether parties may insert, by agreement, language in an administrative hearing order giving such administrative agency powers that are beyond its statutory authority."

The Chancellor's review of the Board's March 27, 2001 Order in this matter is governed by T.C.A. § 4-5-322(h) (1998), which sets forth the standard of review on appeal of administrative proceedings as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

This Court's scope of review is the same as in the trial court; to review the findings of fact of the administrative agency upon the standard of substantial and material evidence. *DePriest v. Puett*, 669 S.W.2d 669 (Tenn. Ct. App. 1984). Although T.C.A. § 4-5-322 does not

clearly define "substantial and material" evidence, courts generally interpret the requirement as requiring "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. 1988) (citations omitted).

While this Court may consider the evidence in the record that detracts from its weight, the Court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *See* T.C.A. § 4-5-322(h); *see also Pace v. Garbage Disposal Dist.,* 390 S.W. 2d 461, 463 (Tenn. 1965). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *See Pace*, 390 S.W.2d at 463.

Construction of a statute and application of the law to the facts is a question of law for the court. *See Sanifill of TN v. Solid Waste Disposal*, 907 S.W.2d 807, 810 (Tenn. 1995). The issue of whether the statute expressly or impliedly grants the Board authority to compromise and settle a disciplinary proceeding by the Agreement between Dr. Bacardi and the Board is a question of law for the Court. *See Id.* at 810.

In the case at bar, it is undisputed that Dr. Bacardi, faced with multiple charges of unacceptable conduct, voluntarily chose to enter into the Agreement set out above. Although there is no express statutory or regulatory provision prohibiting a reapplication for a license, Dr. Bacardi, by his unequivocal Agreement, waived this right.

The language of the Agreement is clear and unambiguous. In *Baird v. Fidelity Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384 (1942), our Supreme Court, quoting from a Massachusetts case, stated:

> "Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive."

In *Stovall of Chattanooga, Inc. v. Cunningham*, 890 S.W.2d 442 (Tenn. Ct. App. 1994), this Court said:

> It is further held that *waiver of a legal right* must be evidenced by a clear, unequivocal and decisive act of the party showing such a purpose. . . .

-10-

*Id.* at 444,  (emphasis added) (quoting ***Webb v. Board of Trustees of Webb School***, 71 S.W.2d 6, 19 (Tenn. Ct. App. 1954)).

Although Dr. Bacardi concedes that he voluntarily signed the Agreement, he asserts that the Board was without authority to make the Agreement the order of the Board, which would prohibit him from reapplying or reactivating his license.  We cannot agree with such an assertion. The Administrative Procedures Act encourages informal settlements of controversies brought pursuant to the Act.  T.C.A. § 4-5-105 (1998) provides:

> **Informal settlements** – Except to the extent precluded by another provision of law, informal settlement of matters that may make unnecessary more elaborate proceedings under this chapter is encouraged.  Agencies may establish specific procedures for attempting and executing information settlement of matters.  This section does not require any party or other person to settle a matter pursuant to informal procedures.

It is implicit from the above statute that settlement of the controversies by the agency must be on terms established by the agency and within its discretion.  Dr. Bacardi has cited no authority that prohibits the Board from compromising and settling a dispute on the terms set out in the Agreement between the parties herein, and we find no provision of the Act that prohibits such a settlement.

Not only did Dr. Bacardi voluntarily enter into the Agreement waiving his right to reactivate or reapply for his license, the Agreement was submitted to the Board and entered as a consent order of the Board.

A consent order is defined as "a solemn contract or judgment of the parties put on file with the sanction and permission of the court." 49 C.J.S. Judgments § 182 (1997). It is well settled in Tennessee that consent orders are valid and binding. ***Underwood v. Zurich Ins. Co.***, 854 S.W.2d 94, 97 (Tenn. 1993).  In ***Nance v. Pankey***, 880 S.W.2d 944, 946 (Tenn. Ct. App. 1993), this Court stated:

> [A consent] order is conclusive upon the consenting parties, and can neither be amended nor in any way varied without like consent; nor can it be reheard, appealed from or reviewed upon writ of error. After a consent decree has become final it can only be attacked by a suit against the counsel who consented to it or by a bill of review or some original action. ***Kelly v. Walker***, 208 Tenn. 388, 346 S.W. 2d 253, 255-56 (1961); ***see also City of Shelbyville v. State ex rel. Bedford County***, 220 Tenn. 197, 415 S.W.2d 139, 144 (1967).

Moreover, in ***Gardiner v. Wood***, 731 S.W.2d 889, 893 (Tenn. 1987), our Supreme Court reaffirmed the validity of consent orders and stated that "the reason for the unassailability of a consent decree is based on the well-founded maxim *volenti non fit injuria* (he who consents to what is done cannot complain of it)." ***See also Rachels v. Steele***, 633 S.W.2d 473, 477 (Tenn. Ct. App. 1981).

Although the trial court ruled correctly, it appears that the court, at least in part, based its decision on an erroneous reason. Where a trial court rules correctly but upon an erroneous reason, the appellate court will sustain the ruling upon what it conceives to be the correct theory. ***See Duck v. Howell***, 729 S.W.2d 110 (Tenn. Ct. App. 1986).

Accordingly, for the reasons set out herein, we affirm the order of the trial court. Costs of the appeal are assessed to the appellant, Brian E. Bacardi, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.