# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 18, 2010 Session

## JIMMY N. WHITE, ET AL. v. BRUCE WHITE, ET AL.

### Direct Appeal from the Chancery Court for Henderson County
No. 18020      James F. Butler, Chancellor

------

### No. W2010-00891-COA-R3-CV - Filed February 4, 2011

------

This appeal arises out of the dissolution of a partnership. After several days of trial, the parties reached a settlement agreement. After the partnership property was sold pursuant to the settlement agreement and the proceeds were to be disbursed, one of the defendants claimed that he was entitled to more money than the settlement agreement provided for him to receive. The trial judge denied the request for additional funds. We affirm and remand for the trial court to determine a reasonable and appropriate attorney's fee.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Carthel L. Smith, Jr., Lexington, Tennessee, for the appellants, Bruce White, et al

William D. Bowen, Milan, Tennessee, for the appellees, Jimmy N. White, et al

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

In 1995, Jimmy and Dorothy White ("Plaintiffs") entered into a partnership with Bruce and Tommie White ("Defendants") in order to conduct business in land development. Plaintiffs and Defendants purchased real property for development and sale, doing business as Susan Branch Development, and thereafter, as White Properties. In 2004, Plaintiffs filed this lawsuit alleging that Defendants had wrongfully and without consent applied partnership monies to their own personal use. Plaintiffs sought a judgment dissolving the partnership and requiring the partnership's property to be sold, with the proceeds to be divided according to the parties' interests after creditors were paid and Plaintiffs were compensated for the misappropriated funds.[1] In the months and years that followed, much of the partnership property was sold, and the funds were deposited with the clerk and master. The parties agreed to numerous consent orders authorizing the payment of certain expenses from the funds held by the clerk.

In April 2005, Defendants filed a motion requesting that they be allowed to use money held by the clerk to pay property taxes owed by the partnership. One month later, a consent order was entered that authorized the clerk to issue a check to Plaintiffs for $28,980, another check to Defendants for $17,727, and a third check to the county trustee for $1,996.

A trial was held over multiple days, but prior to its conclusion, on February 22, 2007, counsel for Plaintiffs announced in open court that the parties had reached a settlement. He described the terms of the settlement, and the trial judge questioned all of the parties under oath about their understanding of the settlement and their agreement to its terms. On April 12, 2007, a consent order was entered that contained the terms of the settlement agreement. It first provided that Plaintiffs were awarded a judgment against Defendants in the amount of $112,500. The order then provided that one-half of the funds currently held by the clerk would be disbursed to Plaintiffs, and the other one-half of the funds would also be disbursed to Plaintiffs but would be credited against the $112,500 judgment owed by Defendants.[2] The order further provided that the real estate still owned by the partnership would be listed with a realtor for one year. Any proceeds from the sale of such real estate would be deposited

---

[1] Defendants filed a counterclaim in which they asserted that they were entitled to compensation for their work for the partnership. The parties later agreed to a consent order granting judgment to Plaintiffs in this regard, stating that Defendants were not entitled to remuneration for expenses and labor they put forth on behalf of the partnership, with the exception of expenses and labor to facilitate the winding up of the partnership's affairs.

[2] Based upon the explanation given by Plaintiffs' counsel in open court, it appears that Plaintiffs would receive $66,703.10 as their one-half of the funds and $66,703.10 to be credited against the $112,500 judgment.

with the clerk and disbursed to Plaintiffs until the remainder of the $112,500 judgment was satisfied. Once the judgment was satisfied, however, the remaining proceeds were to be disbursed equally to Plaintiffs and to Defendants. If, after the one-year listing period, the parties did not agree to extend it, any remaining property would be sold at auction. Again, the auction proceeds were to be deposited with the clerk and disbursed to Plaintiffs until the $112,500 judgment was satisfied. Once the judgment was satisfied, any remaining proceeds were to be disbursed in equal shares to Plaintiffs and to Defendants. The parties further agreed that Plaintiffs would abandon their demand for discretionary costs and that Defendants would abandon any claim for compensation for winding up the partnership affairs. Finally, the order provided that court costs would be equally divided and the parties would pay their own attorney's fees.

The property was listed with a realtor, and after the one-year listing period expired, Plaintiffs filed a motion requesting judicial supervision and seeking authority to take the actions necessary to wind up the partnership affairs. The motion stated that an auctioneer had been selected for the purpose of disposing of the partnership's remaining real estate. On April 30, 2009, an agreed order was entered that granted Plaintiffs' motion and provided that after the property was disposed of at auction, the entire sale proceeds would be deposited with the clerk. From those proceeds, the order provided that the clerk would first pay the auctioneer for his services, then reimburse Plaintiffs for their authorized expenses, then pay Plaintiffs an amount sufficient to satisfy the unpaid remainder of the $112,500 judgment. Finally, the clerk was to disburse any remaining money to the parties in equal one-half shares.

After the auction was held, Plaintiffs filed a motion requesting an order approving the disbursements authorized by the previous consent order, but with specific figures to be paid to the auctioneer and to each party. At a hearing on the motion, counsel for Defendants[3] argued that the residual balance should not be divided equally between the parties because Plaintiffs had received $11,253 more than Defendants prior to trial, in 2005, pursuant to the consent order that authorized the clerk to issue a $28,980 check to Plaintiffs and a $17,727 check to Defendants. The trial court denied Defendants' request for additional funds and divided the remaining funds equally. Defendant Bruce White timely filed a notice of appeal.

---

[3] Defendants' previous attorney had withdrawn, and another attorney appeared on behalf of Defendants at the hearing.

## II. ISSUES PRESENTED

On appeal, Defendant contends that Plaintiffs were "awarded monies above what was the intent and agreement of the parties" and that Plaintiffs were thereby unjustly enriched. Plaintiffs, on the other hand, argue that this appeal is frivolous.

## III. DISCUSSION

### A. Division of the Remaining Funds

The settlement reached by the parties in 2007 provided that after the $112,500 judgment was satisfied, any remaining funds would be "disbursed in equal shares to the Plaintiffs and Defendants." The April 30, 2009 Agreed Order similarly provided that "[a]ny residual monies [would] be disbursed in equal one-half (½) shares, with one-half (½) to be disbursed to the Plaintiffs, Jimmy N. White and Dorothy White, and the other one-half (½) to be disbursed to the Defendants, Bruce White and Tommie White (Campbell)."

On appeal, Defendant points out that these consent orders did not mention the $11,000 discrepancy in the 2005 consent order and did not expressly waive Defendants' right to recoup that money. However, these were detailed orders, which addressed every issue down to the payment of court costs and attorney's fees. When the terms of the settlement were announced in open court, the trial judge asked the parties, under oath, whether they understood the terms of the agreement and whether they thought the settlement was a fair and equitable way to settle "all the issues in this case," to which all of the parties replied, "Yes, sir." We reject Defendant's assertion that he could come back later and request an additional $11,000 to be paid from the remaining funds.[4] We further conclude that Defendant cannot complain that Plaintiffs were unjustly enriched, when he agreed to the method of disbursement utilized by the trial court. "It is well settled in Tennessee that consent orders are valid and binding." *Bacardi v. Tenn. Bd. of Registration in Podiatry*, 124 S.W.3d 553, 562 (Tenn. Ct. App. 2003) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn.

---

[4] Defendant claims that the trial court found that he did not waive his right to recover the extra money. From an examination of the trial judge's remarks, in their entirety, it is clear that the trial judge did not make such a finding. He stated,

> On the issue relative to the May 5, '05 order, the Court denies the right to go back and start over with this trying to equalize the distribution at that point. There was nothing reserved in that order. We've had a number of orders come through since that time. Nothing has been waived. Nothing has been reserved about that order ever in any order that I see. And the final order merges all of these previous orders. And anything that's left unsaid or undone, by implication or otherwise, are merged into the final order. And so that's why we have – that's why we have orders. The final order is to bring things to an end. So that will be denied.

1993)). "'[T]he reason for the unassailability of a consent decree is based on the well-founded maxim *volenti non fit injuria* (he who consents to what is done cannot complain of it).'" *Id.* (quoting *Gardiner v. Word*, 731 S.W.2d 889, 893 (Tenn. 1987)).

## B. *Attorney's fees on Appeal*

As noted above, Plaintiffs contend that this appeal is frivolous and that they should be awarded their attorney's fees on appeal. Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A frivolous appeal is one that is devoid of merit or has little prospect for success. ***Robinson v. Currey***, 153 S.W.3d 32, 42 (Tenn. Ct. App. 2004). The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court. ***Whalum v. Marshall***, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006) (citing *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)). We exercise our discretion under this statute sparingly so as not to discourage legitimate appeals. *Id.* However, we are also mindful that "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Id.* at 181 (quoting *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977)). In this case, we find it equitable to award Plaintiffs their attorney's fees on appeal.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court and remand for the trial court to determine a reasonable and appropriate attorney's fee. Costs of this appeal are taxed to the appellant, Bruce White, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

-5-